**FIRST NATIONAL BANK OF SHAW-NEE MISSION, a national banking association, Plaintiff,**

**v.**

**ROELAND PARK STATE BANK AND TRUST COMPANY et al., Defendants.**

**Civ. A. No. KC–3669.**

United States District Court, D. Kansas.

March 26, 1973.

William H. Leedy, of Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, Mo., Douglas Lancaster, of

Wagner, Leek & Mullins, Shawnee Mission, Kan., for defendants Roeland Park State Bank & Trust Co., and Centennial State Bank.

James A. Pusateri, Asst. U. S. Atty., Kansas City, Kan., John E. Shockey, Director of Litigation, Office of the Comptroller of the Currency, Washington, D. C., Harland F. Leathers, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for defendant William B. Camp, Comptroller of Currency.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

This is an action for declaratory judgment in which the plaintiff First National Bank of Shawnee Mission, a national banking association with its principal place of business in Johnson County, Kansas, asks the court to declare that the defendants, Roeland Park State Bank and Trust Company and Centennial State Bank, banking institutions organized under the laws of the State of Kansas with their principal place of business in Johnson County, Kansas, are foreclosed from seeking judicial review of the decision of the Comptroller of the Currency approving the plaintiff's application for a national banking charter; or, in the alternative, to declare that the plaintiff's charter was legally issued and to enjoin defendants from interfering with plaintiff's banking business. The matter is before the court on various motions which have been filed by the parties and which will be treated in the course of this opinion.

The five organizers of the plaintiff bank filed an application for a national banking charter with the Comptroller of the Currency on November 17, 1971, in accordance with the provisions of the National Bank Act (12 U.S.C. §§ 21–27) and the rules and regulations of the Comptroller (12 C.F.R. § 4.2). After a hearing on February 9 and 10, 1972, when the defendant banks presented oral argument and testimony in opposition to the application, the Comptroller approved the application and notified all parties of his decision on June 14, 1972. (The new bank's Articles of Association and Organization Certificate were formally approved by the Comptroller on July 18, 1972.)

The organizers of plaintiff bank then proceeded with dispatch to make preparations to enter the banking business. Among other things, plaintiff's affidavits reveal that the organizers executed a fifteen-year lease for space in a new office building in Fairway, Johnson County, Kansas; entered into a construction contract for leasehold improvements and a motor bank in the amount of $73,974.64; utilized the services of an architect whose fee amounted to $12,000.00; procured a vault door and equipment, custom-made safe deposit boxes and alarm system, safes, pneumatic equipment, and engineering advice in regard to these items, at a total cost of $46,910.00; ordered a specially-constructed exterior sign at a cost of $9,979.00; hired nine persons, one of whom started to work on September 1, 1972, at a salary which amounted to $3,825.00 in the interim; and incurred additional operating costs in the form of advertising and promotion, insurance and bonds, dues, supplies, and miscellaneous costs, the total of which is approximately $10,500.00. (See Affidavit of Nicholas V. Hudelson, Jr., Executive Vice-President of First National Bank of Shawnee Mission.) Excluding the leasehold agreement, these obligations amount to $157,189.00 and represent a substantial commitment toward the expeditious opening of the new bank. The bank actually commenced business on December 19, 1972, and this action was filed on the same date.

Meanwhile, the defendant banks notified the Comptroller on November 13, 1972, of their intention to seek judicial review of the Comptroller's decision approving the plaintiff's application for a national banking charter. Defendants further requested a stay of the processing of the plaintiff's application, which request the Comptroller denied on December 11, 1972. On December 29, 1972,

the defendants filed their complaint against the Comptroller in the United States District Court for the District of Columbia, but did not join the First National Bank of Shawnee Mission as a party defendant.

At the outset, the court will consider the motion of the defendant banks to dismiss both the complaint against the Comptroller and the Comptroller's cross-claim. During oral argument and in his brief, counsel for defendant banks contended that there is no actual controversy between the plaintiff and the Comptroller and suggested that the Comptroller should be renamed a party plaintiff. None of the parties raises serious objection to this suggestion. Pursuant to Rule 21 of the Federal Rules of Civil Procedure, the court may order a realignment of the parties "on such terms as are just." The court has accordingly determined that the Comptroller of the Currency should be renamed a party plaintiff in this action. Securities and Exchange Commission v. Quing N. Wong, 42 F.R.D. 599 (D.C.P.R.1967). As a consequence, the defendants' motion to dismiss the complaint and cross-claim has become moot.

Defendants have also filed a motion for change of venue or, alternatively, to dismiss the plaintiff's complaint. The defendants contend that the court lacks jurisdiction to hear this action for declaratory judgment where, it is alleged, no federal question is presented. Under the provisions of 28 U.S.C. § 2201, the court may declare the rights and other legal relations of any interested party in a case of actual controversy within its jurisdiction. Jurisdiction of this court attaches if there is either a federal question or diversity of citizenship. Federal Ins. Co. v. Michigan Mut. Liability Co., 166 F.Supp. 537 (D.C.Pa.1958). It is not here asserted that there is diversity of citizenship, but plaintiffs do allege that the matter in controversy exceeds $10,000 and the action "arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331(a). In the ordinary case,

the court must determine the issue of whether or not there is a federal question from the allegations of the well-pleaded complaint. Warner Bros. Records, Inc. v. R. A. Ridges Distributing Co., Inc., 475 F.2d 262 (10th Cir., 1973). In a declaratory judgment action, however, Professor Wright maintains that the court's determination of the issue is based on a somewhat different standard: an action may be entertained in federal court "only if the coercive action that would have been necessary, absent declaratory judgment procedure, might have been so brought." Wright, Federal Courts (2nd ed. 1970) at p. 61. In this instance, the coercive action which defendants could have brought is an action for judicial review pursuant to 5 U.S.C. § 702 to enjoin the Comptroller from issuing an allegedly illegal charter and the plaintiff bank from operating under said charter. (Indeed, that is the nature of the action defendant banks filed against the Comptroller in the District of Columbia.) The defenses which the Comptroller and the First National Bank of Shawnee Mission would have to such an action have been raised here by way of a declaratory judgment action. We think the federal nature of the claim asserted is readily apparent. The court further finds that the complaint adequately states a claim for relief. We conclude that this court has jurisdiction over this action and that the defendants' motion to dismiss the complaint should be denied.

Defendants argue in the alternative that the action should be transferred to the United States District Court for the District of Columbia on the ground that proper venue lies there. Pursuant to 28 U.S.C. § 1404(a), the court may, for the convenience of the parties and witnesses and in the interest of justice, transfer a case to any other district where it might have been brought. The court seriously doubts that this action could have been brought in the District of Columbia. In our view, the court there does not have jurisdiction over all the necessary parties [see Rule 19(b)

of the Federal Rules of Civil Procedure]. Even assuming that the case could have been brought in the District of Columbia, we believe that venue properly lies in this district for the following reasons: (1) all the parties are presently before the court; (2) this court is more familiar with the factual background of the Comptroller's decision; and (3) the convenience of the parties and the interest of justice would be better served by a speedy adjudication in this district. Accordingly, the defendants' motion for change of venue is denied.

We now turn to a consideration of the motion of plaintiff bank for summary judgment on Count I. Defendants' counsel requested at oral argument that he be allowed time in which to file affidavits (and perhaps a deposition) in opposition to the motion. Rule 56(c) provides that opposing affidavits are to be filed *prior* to the day on which the motion is to be heard. Moreover, the court does not think such affidavits would be helpful, since the relevant dates are already before the court and are not in dispute. The request to file affidavits is denied.

The basis for plaintiff bank's motion is the doctrine of laches. The federal statute (5 U.S.C. § 702) which provides for the right of judicial review of administrative action does not set forth the period of time in which the right must be perfected. Plaintiff contends, however, that the defendants should be precluded on equitable grounds from seeking judicial review of the Comptroller's decision because of their failure to initiate any action prior to November 13, 1972, the date when the defendants first notified the Comptroller of their intention in this regard. This was five months after the Comptroller's decision had been rendered on June 14, 1972, and barely one month before the bank opened for business. The defendants' only explanation for the delay is that the case upon which they chiefly rely, claiming it may well represent a change in the law, was not decided until October, 1972. Such speculation about

what the law may or may not be cannot, without more, excuse defendants' inaction.

To invoke the doctrine of laches, plaintiff must prove (1) lack of diligence by the defendants, and (2) prejudice to plaintiffs. Costello v. United States, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1960). Plaintiff bank asserts that, under the circumstances of this case, the two elements combine to present a compelling case for the application of the doctrine. The defendants were well aware of the Comptroller's decision, yet chose to take no action while the organizers of the plaintiff bank expended considerable time and money toward the opening of the new bank at an early date. Plaintiff contends that the substantial change in its economic position prior to November 13, 1972, renders it impossible to place the parties in status quo; hence, enforcement of the defendant banks' right to judicial review would be inequitable and unjust. See Farmers Bank & Trust Co. v. Saxon (D.C.N.C., Case No. C–142–R–64, July 19, 1965) (unpublished).

What constitutes laches is governed by the circumstances of the particular case as well as by the court's ideas of right and justice. Perpetual Royalty Corporation v. Kipfer, 253 F. Supp. 571 (D.C.Kan.1965). The question whether, upon the undisputed facts, the court should deny the party guilty of laches the right to enforce his claim is one of law. 27 Am.Jur.2d 722, Laches § 176. We are constrained to hold that under the circumstances of this case it would be patently inequitable to allow defendants to enforce their right to judicial review after such prejudicial inaction on their part; consequently, defendants are precluded as a matter of law from asserting said right to judicial review. In reaching this result, we are not unmindful of the possible effect a revocation of plaintiff bank's charter at this late date might have on the public's confidence in the regulatory procedures established by the National Bank Act and by the Comptroller.

Our ruling on the previous motion effectively disposes of the case without the necessity of considering the plaintiff's motion for summary judgment on Count II. The court notes nonetheless that there is substantial authority supporting the plaintiff's position that the hearings before the Comptroller are investigatory rather than adjudicatory and that the Comptroller need not make findings of fact and conclusions of law. Sterling National Bank of Davie v. Camp, 431 F.2d 514 (5th Cir. 1970), cert. denied 401 U.S. 925, 91 S.Ct. 879, 27 L.Ed.2d 829 (1971); Citizens Bank of Hattiesburg v. Camp, 387 F.2d 375 (5th Cir. 1967), cert. denied 391 U.S. 904, 88 S.Ct. 1652, 20 L.Ed.2d 418 (1968); Warren Bank v. Camp, 396 F.2d 52 (6th Cir. 1968); First National Bank of Fairbanks v. Camp, 465 F.2d 586 (D.C. Cir. 1972); Webster Graves Trust Company v. Saxon, 370 F.2d 381 (8th Cir. 1966).

It is ordered that the motion of plaintiff First National Bank of Shawnee Mission for summary judgment on Count I be, and hereby is, sustained. Plaintiff's counsel will prepare and cause to be circulated a journal entry reflecting the rulings of the court in this memorandum.