The DOW CHEMICAL
CORPORATION, Plaintiff,

v.

WEEVIL–CIDE COMPANY, INC.; Research Products Company; Hartford Accident and Indemnity Company; Houston General Insurance Co.; Harbor Insurance Company; Manufacturers & General Insurance Company; and Guaranty National Insurance Co., Defendants.

Civ. A. No. 85–2214.

United States District Court,
D. Kansas.

Jan. 30, 1986.

Roger D. Stanton, Steve A. Leben, Stinson, Mag & Fizzell, Overland Park, Kan., Frank Libbe, David M. Bernick, Kirkland & Ellis, Chicago, Ill., for plaintiff.

Keith Martin, Payne & Jones, Overland Park, Kan., for Weevil-Cide Co., Inc. & Research Products Co.

Reid F. Holbrook, Ronald D. Garrison, Fallon, Holbrook & Ellis, Kansas City, Kan., for Houston General Ins. Co.

Frank Saunders, Jr., Wallace, Saunders, Austin, Brown & Enochs, Overland Park, Kan., for Hartford Acc. & Indem. Co.

John J. Jurcyk, Jr., Robert B. Van Cleave, McAnany, Van Cleave & Phillips, Kansas City, Kan., for Guaranty Nat. Ins. Co.

Edward M. Boddington, Jr., Boddington & Brown, Kansas City, Kan., for Harbor Ins. Co.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on the separate motions of defendants Hartford Accident and Indemnity Company, Houston General Insurance Company, Harbor Insurance Company, and Guaranty National Insurance Company ("insurer/defendants") to dismiss the complaint, on the joint motion of defendants Weevil-Cide Company, Inc., and Research Products Company ("manufacturer/defendants") to dismiss Counts III and IV of the complaint, on the joint motion of the manufacturer/defendants for a change of venue, and on conflicting requests for designation of place of trial.

### I. *Insurer/Defendants' Motions to Dismiss.*

These four insurer/defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted. In considering a motion to dismiss, the factual allegations of the complaint must be taken as true and all reasonable inferences must be indulged in favor of the plaintiff. *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir.1976); *Dewell v. Lawson*, 489 F.2d 877, 879 (10th Cir.1974). A complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The question is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims.

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

In its complaint, plaintiff makes the following factual allegations. The manufacturer/defendants developed a liquid grain fumigant known as "Weevil-Cide." Plaintiff agreed to blend or formulate the Weevil-Cide pursuant to a proprietary formula supplied by those defendants, and then to ship the Weevil-Cide pursuant to their instructions.

In October of 1978, two employees of the Farmers Union Grain Terminal Association in Superior, Wisconsin, brought suit against plaintiff, the manufacturer/defendants, and "others" to recover for personal injuries allegedly suffered as a result of exposure to Weevil-Cide. The remaining defendants in this case are alleged to have issued liability insurance policies to the manufacturer/defendants—some or all of which policies were in force during the period covered by the personal injury lawsuits. Whether these insurance companies were among the "others" sued in the earlier action is not clear.

On April 18, 1984, plaintiff settled in full the personal injury plaintiffs' claims against all the defendants in that earlier action. None of the defendants in this action chose to participate in those settlement negotiations, although they were offered several opportunities to do so. Plaintiff alleges that the sum paid in settlement of those claims was "reasonable," and that defendants are thus liable to plaintiff for those portions of the settlement award represented by their respective shares of the total fault.

In their various motions to dismiss, the insurer/defendants contend that plaintiff is attempting to obtain a judgment against them without first obtaining a judgment against their insureds, and that such a "direct action" is barred by the common law of Kansas. These contentions are correct. The Kansas Supreme Court has repeatedly held that Kansas does not permit direct actions against an insurer; a judgment must first be obtained against the insured. *White v. Goodville Mutual Casualty Co.*,

226 Kan. 191, 192, 596 P.2d 1229, 1230 (1979); *Miller v. William A. Smith Constructing Co.*, 226 Kan. 172, 175, 603 P.2d 602, 604–05 (1979); *Bayless v. Bayless*, 193 Kan. 79, 80, 392 P.2d 132, 133 (1964).

Plaintiff concedes that Kansas common law does not permit such a direct action. It contends, however, that this case must be decided on the basis of *Wisconsin* law, which does permit such actions. *See* Wis. Stat. § 803.04(2)(a). In response to this contention, the insurer/defendants raise the following three arguments: (1) Wisconsin law does *not* apply, (2) the Wisconsin direct action statute is procedural rather than substantive, and thus inapplicable in this Kansas forum, and (3) even if substantive, enforcement of the Wisconsin direct action statute would be contrary to Kansas public policy, and thus forbidden. We examine each of these arguments in turn.

### A. *Choice of Law.*

In a diversity action such as this, a federal court must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Fagan v. John Hancock Mutual Life Ins. Co.*, 200 F.Supp. 142, 143 (D.Kan. 1961). Plaintiff characterizes this suit as a tort action—contending that it wishes merely to enforce the injured workers' initial right to recover against the manufacturer/defendants for their personal injuries. In tort actions, Kansas follows the rule of *lex loci delicti*—the law of the state where the tort occurred. *Ling v. Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731, 735 (1985). Plaintiff further notes that the workers were injured in Wisconsin rather than in Kansas.

On the other hand, the insurer/defendants suggest that, at least as to them, the suit is more in the nature of a contract action. Plaintiff is attempting to enforce the insurer/defendants' contracts of insurance with the manufacturer/defendants. In contract actions, Kansas applies the rule of *lex loci contractus*—the law of the state in which the contract is made. *First Na-*

*tional Bank of Beaver, Oklahoma v. Hough*, 643 F.2d 705, 706 (10th Cir.1981). In *Aetna Casualty & Surety Co. v. Gentry*, 191 Okl. 659, 132 P.2d 326, 331 (1942), the Oklahoma Supreme Court applied the *lex loci contractus* rule in determining that insurance contracts executed in Kansas should be enforced in accordance with the Kansas statute under which they were written, rather than the contrary Oklahoma law. Although the state in which these insurance contracts were executed is not clear from the complaint, it would no doubt be either the manufacturer/defendants' home state (Kansas) or the insurer/defendants' home states (none of which was Wisconsin). The insurer/defendants thus contend that the Wisconsin direct action statute is irrelevant to this case.

The parties have not extensively briefed this choice of law question. Certainly, neither position is legally frivolous. We see no need to resolve this dispute at the present time, however, since the ultimate result would be the same under either view. For purposes of this motion, we will simply assume that Wisconsin law would apply to the question of whether these insurer/defendants are properly subject to suit.

### B. *Substance v. Procedure.*

Kansas follows the usual common law rule that, regardless of which state's substantive law is to be applied, the forum court applies its own law as to matters of procedure. *See Toner v. Conquerer Trust Co.*, 131 Kan. 651, 657, 293 P. 745, 748 (1930). This "characterization" of a legal issue as either substantive or procedural is to be made in accordance with the law of the forum state. *Restatement (Second) of Conflict of Laws* § 7(2); 16 Am.Jur.2d, *Conflict of Laws* § 3 (1979). The parties have not cited, and we have not found, a case in which a Kansas court considered the Wisconsin direct action statute. We thus have no indication of whether such a court would characterize that statute as substantive or procedural. We note that other states disagree as to its proper characterization. *Compare Davis v. Furlong,*

328 N.W.2d 150, 152 (Minn.1983) (procedural), *with Marchlik v. Coronet Insurance Co.*, 40 Ill.2d 327, 331–33, 239 N.E.2d 799, 802 (1968) (substantive), *and Lieberthal v. Glens Falls Indemnity Co.*, 316 Mich. 37, 38–39, 24 N.W.2d 547, 548 (1946) (question left open).

As was true of the choice of law question, our ultimate analysis does not depend upon correctly characterizing the Wisconsin direct action statute as either procedural or substantive. We will thus join the Michigan court in declining to characterize that statute. For purposes of this motion, we will simply assume that the Wisconsin direct action statute is a substantive rule of law, and not a procedural matter.

### C. *Kansas Public Policy.*

■ The substantive law of a foreign state is entitled to comity in a Kansas court (including this federal court) unless contrary to Kansas public policy. 16 Am. Jur.2d, *Conflict of Laws* § 17 (1979). A case in which Kansas public policy was held to override this presumption of comity is *Barbour v. Campbell*, 101 Kan. 616, 168 P. 879 (1917). In *Barbour*, the defendant made an oral promise to pay her father's debt. The resulting contract was concededly executed in Idaho and was enforceable under Idaho's statute of frauds. The Kansas court noted that such an oral contract would not be enforceable under the Kansas statute of frauds. Therefore, although a Kansas court would ordinarily have interpreted the contract in accordance with Idaho law (*i.e.*, *lex loci contractus*), the court refused to do so in that case. The court's rationale was as follows:

> Ordinarily a contract which is valid where made is valid everywhere, but there is a well-known exception to that rule. Briefly stated, the exception is that where the contract contravenes the settled public policy of the state whose tribunal is invoked to enforce the contract, an action on that contract will not be entertained.

101 Kan. at 617, 168 P. at 880.

■ Therefore, the relevant question in this case is whether enforcement of the Wisconsin direct action statute would be contrary to Kansas public policy. Again, there are no reported cases addressing this point. We must thus attempt to predict how the Kansas Supreme Court would rule on this question.

Relevant to our determination of Kansas public policy is the following statute:

> *Liability Insurance.* Evidence that a person was, at the time a harm was suffered by another, insured wholly or partially against loss arising from liability for that harm is inadmissible as tending to prove negligence or other wrongdoing.

K.S.A. 60–454. On its face, this statute would appear to be rather narrow—excluding evidence of liability insurance *only* if such evidence is intended to prove negligence or other wrongdoing. The Kansas Supreme Court, however, has adopted a far more absolutist position on the admissibility of evidence concerning liability insurance. For instance, in *White v. Goodville Mutual Casualty Co., supra*, the court noted, "The long-standing rule in Kansas is that the mere mention of defendant's insurance in an automobile collision case is reversible error." 226 Kan. at 192, 596 P.2d at 1230. And in *Schmidt v. Farmers Elevator Mutual Insurance Co.*, 208 Kan. 308, 491 P.2d 947 (1971), the court made rather explicit reference to the rationale for excluding such evidence:

> We vaguely sense, as we read between the lines of Schmidt's brief, that perhaps he considered his position would have been improved had the insurance company been kept in the case as one of his opponents. But our statute, K.S.A. 60–454, forbids the use of such an inflammatory word as "insurance" during trial of a damage action, and our cases have upheld the hypothesis that mention of the odious term may not be breathed, lest prejudice arise.

208 Kan. at 315, 491 P.2d at 953.

Clearly, the Kansas Supreme Court's resistance to potential prejudice caused by

allowing a jury to learn that a defendant carries liability insurance is an important factor in our determination of Kansas public policy. The supreme courts of Illinois and Michigan have cited this same public policy in refusing to enforce the Wisconsin direct action statute. *See Lieberthal, supra*, 316 Mich. at 40–42, 24 N.W.2d at 549 ("The public policy sought to be sustained in this State by the statute and the judicial decisions is that a plaintiff shall not be permitted to inject into his suit the element of insurance and thereby obtain an excessive and unjust verdict."); *Marchlik, supra*, 40 Ill.2d at 333–35, 239 N.E.2d at 803 ("Disclosure of liability coverage at a trial against an insured for injuries resulting from his negligence constitutes prejudicial error in this State, contrary to the rule prevailing in Wisconsin.").

Based on our analysis of Kansas law, we believe that the Kansas Supreme Court would join the supreme courts of Illinois and Michigan in holding that its state's public policy is so strong as to foreclose enforcement of Wisconsin's direct action statute in Kansas state courts. Accordingly, the insurer/defendants' motions to dismiss will be granted.

Defendant Manufacturers & General Insurance Company has not filed a motion to dismiss the complaint. The allegations against that defendant differ in no material respect, however, from those against the other insurer/defendants. Kansas public policy would thus similarly operate as a bar to maintenance of plaintiff's suit against that defendant. For that reason, we will order the complaint dismissed as to that defendant, *sua sponte.*

## II. *Manufacturer/Defendants' Motion to Dismiss.*

Plaintiff's complaint consists of four counts. Through Count I, plaintiff alleges that the manufacturer/defendants (and thus the insurer/defendants) have been unjustly enriched in the amount of their liability for the workers' personal injuries that plaintiff's payment of the settlement enabled them to avoid. Count II seeks contribution and indemnification from those defendants to the extent that the settlement amount paid by plaintiff exceeded the proportional amount properly attributable to plaintiff's negligence. Counts III and IV relate specifically to the *labeling* of the Weevil-Cide containers. Under Count III, plaintiff alleges that the manufacturer/defendants assumed the responsibility for properly labeling the Weevil-Cide and that their failure to fulfill that duty entitles plaintiff to indemnification for part or all of the settlement amount paid. Count IV alleges that the manufacturer/defendants represented to plaintiff that they would properly label the Weevil-Cide and impliedly agreed that they would indemnify plaintiff for any liability resulting from improper labeling.

In Counts III and IV of the complaint, plaintiff makes reference to the Federal Insecticide, Fungicide, and Rodenticide Act of 1947 (FIFRA). The manufacturer/defendants now move to dismiss Counts III and IV on the ground that FIFRA creates no private cause of action. As authority for this proposition, said defendants cite *In re Agent Orange Product Liability Litigation*, 506 F.Supp. 737 (E.D.N.Y.1979); *In re Agent Orange Product Liability Litigation*, 635 F.2d 987, 991–92 n. 9 (2d Cir. 1980); and *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir.1983).

■ We find it unnecessary to decide whether FIFRA does create a private cause of action. Rather, we agree with plaintiff that the complaint does not purport to state a cause of action under FIFRA. The statute is mentioned only to explain why the manufacturer/defendants allegedly agreed to assume the task of labeling the Weevil-Cide even though plaintiff performed the actual blending. Under FIFRA, the manufacturer/defendants allegedly qualified as "registrants" and thus bore such labeling responsibility. To recover under Counts III and IV, plaintiff need only establish that the manufacturer/defendants either assumed the duty of properly labeling the Weevil-Cide (Count III) or expressly represented to plaintiff that they would so label

the Weevil-Cide (Count IV). The provisions of FIFRA have no direct bearing on such proof.

Having rejected the contentions put forth by the manufacturer/defendants, we will deny their motion to dismiss. In so doing, we do not necessarily imply that each of the four legal theories put forth by plaintiff is an independent and valid cause of action under either Kansas or Wisconsin law.

### III. *Manufacturer/Defendants' Motion for Change of Venue.*

■ According to the complaint, plaintiff is a Delaware corporation with its principal place of business in Michigan, defendant Weevil-Cide Company, Inc., is a Kansas corporation with its principal place of business in Salina, Kansas, and defendant Research Products Company is a Missouri corporation with its principal place of business in Salina, Kansas. Invoking 28 U.S.C. § 1404(a), the manufacturer/defendants now seek a change of venue from this court to the United States District Court for the Western District of Wisconsin. That court was the forum in which the workers' personal injury suits were filed and eventually dismissed with prejudice pursuant to the settlement agreement.

The transfer statute cited by the defendants provides as follows:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In *Ammon v. Kaplow*, 468 F.Supp. 1304 (D.Kan.1979), we reviewed the law concerning such transfers.

It is hornbook law that the burden is on the moving party to establish that a suit should be transferred under Section 1404(a). Unless the balance of the consideration is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed. A plaintiff's choice of forum is entitled to great weight and may not lightly be set aside. Additional consideration is properly giv-

en when the plaintiff has chosen the forum in which he resides. This court further notes that the exercise of the power to transfer under Section 1404(a) is committed to the sound discretion of the trial court after consideration of all the relevant interests.

468 F.Supp. at 1313 (citations omitted).

In this case, defendants are in the unusual position of requesting that this case be transferred to a district in which *no* party resides. The factors cited in support of this motion, largely the Wisconsin court's greater familiarity with the earlier personal injury suits, seem rather trivial in comparison with the fact that plaintiff came to defendants' home district in which to file suit against them. As for the Wisconsin court's alleged greater familiarity, we note that neither personal injury suit came to trial in Wisconsin. Rather, they were dismissed with prejudice as a result of the settlement. Apparently, the Wisconsin court had no occasion to examine the merits of those personal injury suits, having ruled only on the effect of the applicable statute of limitations. Considering all the factors put forth by the various parties, we conclude that the manufacturer/defendants have failed to overcome the strong presumption in favor of the plaintiff's choice of forum. Accordingly, we will deny their motion for a change of venue.

### IV. *Conflicting Requests for Designation of Place of Trial.*

■ Plaintiff filed this action in Kansas City and requested that trial be held in that same city. The manufacturer/defendants requested that trial be in Salina. It thus falls to the court to resolve these conflicting designations of place of trial. Local Rule 8, ¶ 4.

Only the plaintiff has briefed this issue. It points out that its representatives and witnesses, along with many other witnesses, live outside the state of Kansas. Because Kansas City has better air connections than does Salina, a trial in Kansas City would be more convenient for those individuals. Moreover, all parties have re-

tained counsel in the Kansas City area, while no Salina area attorney has entered his or her appearance in the case. Finally, court personnel reside, and court documents are maintained, in the Kansas City area. To our knowledge, the only basis for designating Salina as the place of trial is that defendants and some of their witnesses reside in the Salina area. We find that the factors cited by plaintiff far outweigh any greater convenience to defendants of holding trial in Salina. Accordingly, we will designate Kansas City as the place of trial.

### ORDER

IT IS THEREFORE ORDERED that the motions to dismiss of defendants Hartford Accident and Indemnity Company, Houston General Insurance Company, Harbor Insurance Company, and Guaranty National Insurance Company are granted.

IT IS FURTHER ORDERED that plaintiff's claim against defendant Manufacturers & General Insurance Company is dismissed, *sua sponte.*

IT IS FURTHER ORDERED that the motion of defendants Weevil-Cide Company, Inc., and Research Products Company to dismiss Counts III and IV of the complaint is denied.

IT IS FURTHER ORDERED that the motion of defendants Weevil-Cide Company, Inc., and Research Products Company for a change of venue is denied.

IT IS FURTHER ORDERED that the trial of this matter be held in Kansas City, Kansas.