US TELECOM, INC.; GTE Communications Services, Incorporated; and US Sprint Communications Company, Plaintiffs,

v.

Lothar Walter HUBERT, Defendant.

Civ. A. No. 87–2344.

United States District Court,
D. Kansas.

Nov. 24, 1987.

J. Nick Badgerow, Josephine A. Mayer, Spencer, Fane, Britt & Browne, Overland Park, Kan., George S. Duesdieker, Burlingame, Cal., for plaintiffs.

David McLain, White & Groneman, Kansas City, Kan., Jon B. Sigerman, P.C., San Francisco, Cal., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on the motion of defendant Lothar W. Hubert [hereinafter "Hubert"] to dismiss or, in the alternative, to transfer a declaratory judgment action brought by plaintiff US Sprint Communications Company [hereinafter "Sprint"] and its partners, US Telecom, Inc., and GTE Communications Services, Inc. [hereinafter "GTE"].

The pertinent facts are as follows: On August 20, 1982, Hubert was hired to work in Burlingame, California, as a supervising engineer by GTE, a predecessor of Sprint. Following formation of the Sprint partnership, Hubert was informed by a letter dated June 30, 1986, that he would continue to be employed in Burlingame and that he was "eligible to participate in the employee benefit programs offered by US Sprint." Hubert worked in the broadband lease administration division of Sprint. This division, according to a complaint Hubert filed in California state court, has moved to Kansas City, Missouri. In the fall of 1986, Hubert began reporting to Bijan Moaveni [hereinafter "Moaveni"], director of the engineering group located in Kansas City. On October 15, Hubert wrote Moaveni, ex-

pressing surprise and displeasure regarding the asserted fact that Hubert's subordinate, Ed Koert [hereinafter "Koert"], had assumed Hubert's position. Koert, who is approximately twenty years younger than Hubert, subsequently moved to Kansas city. On January 5, 1987, Robert Leedum [hereinafter "Leedum"], a manager in Sprint's regional personnel office in California, told Hubert he would be laid off, effective January 23. Sprint, asserting that Hubert's position had been eliminated, dismissed him on that date.

On February 23, Hubert's lawyer wrote Sprint, alleging that Hubert's dismissal was a contractual breach, a tort, or an action motivated by age discrimination. The letter included a settlement offer, and it stated that Hubert would prefer to resolve the matter without litigation.

In April, Hubert filed an action with the California Department of Fair Employment and Housing, alleging age discrimination in violation of California law. On June 3, 1987, the department issued a notice of case closure, giving Hubert the right to bring a private action.

On July 14, Sprint, which administers its employee welfare benefit plan in Kansas, filed a declaratory judgment action in this court, seeking a decision that the Employee Retirement Income Security Act [hereinafter "ERISA"] controlled any claim regarding the plan, that there was no employment contract, that the termination was not tortious, and that Sprint owed Hubert only those benefits provided in the plan. Process was served on Hubert on July 16.

On the same day, Hubert filed an action in the San Mateo County, California Superior Court. The action alleged breach of an employment contract, tortious and contractual breach of a covenant of good faith, age discrimination in violation of California Gov.Code Section 12941, fraud and misrepresentation, and intentional infliction of emotional distress. Hubert's complaint further alleged that factors motivating Sprint's termination decision were his age and the avoidance of payment of pension benefits.

Hubert subsequently filed this motion under Federal Rule of Civil Procedure 12 to dismiss or transfer Sprint's declaratory judgment action. Specifically, he contends that this court lacks personal and subject matter jurisdiction or, in the alternative, that the interests of justice compel dismissal or a transfer of venue.

## I. *Subject Matter Jurisdiction.*

 Initially, a brief examination of the law regarding declaratory judgments and subject matter jurisdiction is necessary. The Declaratory Judgment Act allows an interested party in a situation with actual controversy to have its rights and other legal relations declared by a federal court upon proper pleading. *See* 28 U.S.C. § 2201. The Act confers no additional subject matter jurisdiction on federal courts; rather, jurisdiction must be afforded by another federal statute. *Bard v. Seamans,* 507 F.2d 765, 767 (10th Cir.1974) (citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)). In other words, jurisdiction attaches if there is a federal question or diversity of citizenship. *First Nat'l Bank of Shawnee Mission v. Roeland Park State Bank & Trust Co.,* 357 F.Supp. 708 (D.Kan.1973). If the cause of action that would have been brought, absent the declaratory action, could have proceeded in federal court, the federal court has subject matter jurisdiction over the declaratory action. *Id.* (citing Wright, *Federal Courts* (2d ed. 1970) at p. 61).

 Section 510 of ERISA states as follows:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

29 U.S.C. § 1140. We need not question whether there is an actual controversy or speculate whether an action brought by Hubert would state a claim under ERISA, as we may focus on his California complaint. The complaint alleges that factors motivating his dismissal were his age and Sprint's avoiding payment of pension benefits. These allegations state a cause of action under ERISA section 502(a)(1)(B), which provides that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

 This court has subject matter jurisdiction over Sprint's declaratory judgment action concerning the ERISA cause under section 502(e)(1), which states:

Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

29 U.S.C. § 1132(e)(1). *See Clorox Co. v. U.S. District Court for the Northern District of California,* 779 F.2d 517, 521 (9th Cir.1985) (ERISA provides a federal court with subject matter jurisdiction over an employee's claims to recover benefits); *see also Metropolitan Life Ins. Co. v. Taylor,* — U.S. ——, —— ——, 107 S.Ct. 1542, 1546–1548, 95 L.Ed.2d 55, 63–65 (1987) (same). Additionally, we have subject matter jurisdiction over the remaining claims under the doctrine of pendent jurisdiction because they arise from a common nucleus of operative facts, and all of the claims are such that they could reasonably be litigated in one proceeding. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

## II. *Dismissal.*

 Hubert seeks dismissal of Sprint's declaratory judgment action under Rule 12

because his California state court action concerns the same issues, is in a forum more familiar with California law, and is in a forum more convenient for the parties and the witnesses. Although a federal court should avoid interfering, through a declaratory action, with state court litigation concerning the same issues not governed by federal law, *see Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942), different considerations are involved here because of ERISA. The preemptive scope of ERISA is broad; ERISA controls Hubert's benefit claim, and it gives this court jurisdiction over the claim. *See Metropolitan Life*, — U.S. at — – —, 107 S.Ct. at 1546–1548, 95 L.Ed.2d at 63–65. A federal court should rarely decline to exercise the jurisdiction given it. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (citing cases). Thus we decline to dismiss Sprint's action.

### III. *Venue.*

■ Hubert also seeks a change of venue pursuant to 28 U.S.C. § 1404(a), which allows a district court in which venue properly lies to transfer an action, in the interest of justice, to another district where it could have been brought. *Combs v. Adkins & Adkins Coal Co., Inc.*, 597 F.Supp. 122, 125 n. 1 (D.D.C.1984). ERISA section 502(e)(2) provides:

> Where an action under this title is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2). Venue properly lies in this court because Sprint's employee welfare benefit plan is administered in the District of Kansas.

■ To transfer an action under section 1404(a), a district court must have subject matter jurisdiction. *See Association De Pescadores De Vieques, Inc. v. United States*, 497 F.Supp. 54, 55 (D.P.R.1979) (citing 15 Wright, Miller and Cooper, *Federal Practice and Procedure* § 3844); *Viaggio v. Field*, 177 F.Supp. 643, 647 (C.D.Md. 1959) (citing cases). As discussed above, this court has subject matter jurisdiction. However, the court need not have personal jurisdiction to transfer under 1404(a). *See United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir.1964); *Koehring Co. v. Hyde Const. Co.*, 324 F.2d 295, 297–98 (5th Cir. 1963). Thus if a transfer of venue is proper, we need not rule on the difficult question of whether a federal court may assert personal jurisdiction over a defendant in an action involving a nationwide service of process statute, such as ERISA section 502(e)(2), where the defendant has virtually no contacts with the state in which the federal court sits. We therefore address the propriety of transfer before discussing personal jurisdiction.

■ Sprint asserts that an action regarding benefits under its employee welfare benefit plan should be heard in this court because the plan is administered in Kansas. It contends that this will insure uniform administration of the plan throughout the country, thus allowing it to fulfill its fiduciary duty to administer the plan for the best interests of all participants. *See* 29 U.S.C. § 1104(a)(1). Hubert responds that because the relevant witnesses and parties are in California, the facts giving rise to the claim occurred in California, and California law is involved, the case should be transferred to the Northern District of California.

Initially, Sprint's assertion regarding uniform administration has little force in this case, which primarily concerns whether Hubert was wrongfully discharged. Hubert's contention that Sprint was partially motivated in its actions by the desire to avoid payment of pension benefits does not concern interpretation or application of the plan. Any affect on the plan and its overall administration is merely consequential in that if Hubert successfully proves his claims, he will recover under the plan.

As Sprint's memorandum asserts, under section 1404(a), the moving party bears the considerable burden of establishing that transfer is proper. *See Dow Chemical Corp. v. Weevil–Cide Co.,* 630 F.Supp. 125, 130 (D.Kan.1986). The *Dow* decision states:

It is hornbook law that the burden is on the moving party to establish that a suit should be transferred under Section 1404(a). Unless the balance of the consideration is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed. A plaintiff's choice of forum is entitled to great weight and may not lightly be set aside. Additional consideration is properly given when the plaintiff has chosen the forum in which he resides. This court further notes that the exercise of the power to transfer under Section 1404(a) is committed to the sound discretion of the trial court after consideration of all the relevant interests.

*Id.* (quoting *Ammon v. Kaplow,* 468 F.Supp. 1304, 1313 (D.Kan.1979) (citations omitted)).

Factors which may be considered when determining whether to transfer an action include convenience to the parties, convenience to witnesses, and interests of justice. 28 U.S.C. § 1404(a). Courts have considered other facts, including the financial abilities of the parties, *see Houk v. Kimberly–Clark Corp.,* 613 F.Supp. 923, 929 (W.D.Mo.1985), the court's familiarity with state law applicable to pendent claims, *see Van Dusen v. Barrack,* 376 U.S. 612, 645, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964), and the pendency of another action between the parties in another court. *See Coakley & Booth v. Baltimore Contractors, Inc.,* 367 F.2d 151 (2d Cir.1966).

Hubert has failed to meet his burden of proving that the convenience of the parties and witnesses will be furthered by transferring this action to the Northern District of California. Although Hubert resides in California, Sprint's principal place of business is Kansas. The location of Sprint's benefit plan administrators, as discussed above, is irrelevant; however, the location of the Sprint division in which Hubert was employed is very relevant. This division likely employs important witnesses, including the persons through whom Sprint acted regarding the discharge. Hubert's California state court complaint, the letter from Hubert's attorney to Sprint, and the letter from Hubert to Moaveni, Hubert's superior, indicate that the division was moved from California to Kansas City, Missouri. Additionally, these documents show that Moaveni and Koert reside in Kansas City and indicate that Leedum resides in California. Neither Sprint nor Hubert addressed the location of the division or these individuals in the briefs filed in this court.

Thus the evidence suggests that most individuals central to this action reside in the Kansas City area. Although Hubert might be inconvenienced by litigation in this court, transfer would simply shift the inconvenience to Sprint and its employees. Transfer is not warranted where it results merely in shifting inconvenience from one party to another. *Ammon,* 468 F.Supp. at 1314. *Compare Adler v. American Standard Corp.,* 478 F.Supp. 8, 9 (S.D.N.Y.1979) (transferring an action for wrongful termination because all of the parties central to the termination decision were located in another district). Additionally, transfer is not warranted simply because Hubert alleges that important witnesses live in California, especially in light of the evidence suggesting otherwise. He is obligated to provide the court with sufficient information to allow it to balance the parties' interests and the inconvenience to the witnesses, and he must show that his witnesses' inconvenience will be much greater than that of Sprint's witnesses if the case is transferred. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 258–59, 102 S.Ct. 252, 267–68, 70 L.Ed.2d 419 (1981) (the party seeking transfer must provide the court sufficient information to allow it to balance the parties' interests, although here, specificity of individual witnesses is not needed); *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979) (the party seeking transfer must clearly specify key witnesses who

will benefit; otherwise, a transfer motion will be denied); *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.*, 436 F.Supp. 444, 446 (W.D.Okla.1976) (transfer based on the convenience of witnesses is only warranted if the inconvenience of the defendant's witnesses far outweighs that which plaintiff's witnesses will experience upon transfer). Hubert has failed to provide the court with information regarding witnesses that tilts the balance in favor of transfer.

Further, other considerations do not warrant transfer. Although a California district court might be more familiar with California law regarding torts, contracts, and age discrimination, we are assured that with counsel's assistance, this court can ably comprehend and apply California law. *See Ammon*, 468 F.Supp. at 1314. Additionally, Hubert, who may be less financially able to transport witnesses to the trial site, may actually benefit financially from trial in this court if, as it appears from the record before us, key witnesses reside in the Kansas City area. Finally, the pendency of the California state court action will not deter this court from exercising its ERISA jurisdiction, and the possibility of removal of the state court action to the Northern District of California loses importance given the likely location of key witnesses.

In summary, the burden is on Hubert to establish that transfer is clearly warranted, and because of the evidence indicating that key witnesses reside in the Kansas City area and his failure to specify otherwise, he has not met this burden.

IV. *Personal Jurisdiction.*

Because transfer is not warranted, we must determine whether this court has personal jurisdiction over Hubert. The personal jurisdiction requirement "recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Insurance Corp. of Ireland v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702, 102 S.Ct.

2099, 2104, 72 L.Ed.2d 492 (1982) (footnote omitted).

The Supreme Court's decisions in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny require that a defendant in a state court action have sufficient contacts with the forum state such that the suit "does not offend 'traditional notions of fair play and substantial justice.'" *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293, 100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980) (quoting *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940))). This minimum contacts requirement arises from the due process clause of the fourteenth amendment, *World–Wide Volkswagen*, 444 U.S. at 291, 100 S.Ct. at 564, and the requirement extends to federal courts sitting with diversity jurisdiction. *See, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed. 2d 790 (1984). The requirement also extends to federal question "cases where a federal court must borrow a state long-arm statute in order to acquire personal jurisdiction over a non-resident defendant[,]" *Haile v. Henderson National Bank*, 657 F.2d 816, 826 n. 10 (6th Cir.1981), *cert. denied*, 455 U.S. 949, 102 S.Ct. 1450, 71 L.Ed.2d 663 (1982), such as cases arising under the Constitution where there is no attendant service of process statute. In contrast to these cases, decisions discussing constitutional due process and nationwide service statutes focus on fifth amendment due process. *See, e.g., Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191, 202 (E.D.Pa.1974); *Bamford v. Hobbs*, 569 F.Supp. 160, 165 (S.D.Tex. 1983).

Hubert argues that the minimum contacts test of *International Shoe* and its progeny compels a finding of no personal jurisdiction, as he has no contacts whatsoever with Kansas. Sprint argues that Hubert's contacts with Kansas are irrelevant under ERISA's national service provision, and that Hubert's contacts with California adequately afford him due process in this action.

Rule 4(e) provides that process may be served in the manner prescribed by federal statute. National service of process is authorized by ERISA section 502(e)(2). 29 U.S.C. § 1132(e)(2). Hubert, who resides and was served in San Mateo County, California, was properly served under section 502(e)(2). The question remains, however, whether this service, and the attendant personal jurisdiction of this court, complies with constitutional due process requirements. This question has not been ruled on by the Supreme Court, the Tenth Circuit, or this court.[1]

Federal court decisions addressing the issue of due process and national service apply varied rationales yielding varied results. However, examination of these cases indicates that they may be grouped into two broad categories: those requiring some contacts with the state in which the federal court sits, and those requiring no contacts with the state.

Decisions requiring some contacts often cite *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191 (E.D.Pa.1974), which discusses personal jurisdiction under the Securities Exchange Act of 1934, section 27. 15 U.S.C. § 78aa. Section 27, like ERISA section 502(e)(2), allows for nationwide service; thus, the *Oxford* court's analysis is relevant here. The court stated as follows:

> We reject the notion that there are no limitations upon extraterritorial service of process under federal statutes such as the securities acts; the existence of the Fifth Amendment would indicate otherwise....

Even though we are not persuaded that federal service of process statutes are constrained by constitutional due process strictures as defined by *International Shoe*, we believe that the federal extraterritorial service power is not unlimited, and that some limitations thereon must be imposed. But we believe that it is better to include the traditional procedural due process notions as *a part* of a judicial fairness test, rather than impose the *International Shoe* mandate of due process on federal nationwide service of process statutes.

*Id.* at 201, 203 (footnote omitted). The court then described the fairness test, which focuses on the following five factors: (1) the extent of the defendant's contacts with the place where the action was brought, (2) the inconvenience to the defendant of having to defend in a place other than that of his residence or place of business, (3) judicial economy considerations, (4) the probable place of discovery, and (5) the nature of the regulated activity in question. *Id.* at 203–04. Applying the test, the court determined that it had personal jurisdiction over the defendants.

A number of federal courts have followed the *Oxford* lead and require some contacts with the forum state, although most do not mandate contacts sufficient to meet the *International Shoe* test.[2]

In contrast, a second line of cases holds that there is no requirement of minimum contacts with the state in which the federal court sits when a federal statute provides for nationwide service of process.[3] Many of these cases have reasoned that fifth amendment due process, with respect to nationwide service of process, requires only

---

1. Judge Crow stated in passing in *Pioneer Properties, Inc. v. Martin,* 557 F.Supp. 1354 (D.Kan. 1983), that due process contacts analysis is unnecessary where nationwide service is authorized. *Id.* at 1358 n. 6. However, the analysis was not central to the case, which dealt with service of foreign nationals in a foreign country, *id.* at 1358–59, and thus we do not consider it dispositive here.

2. *See Kinsey v. Nestor Exploration Ltd.,* 604 F.Supp. 1365, 1373 (E.D.Wash.1985); *GRM v. Equine Investment & Management Group,* 596 F.Supp. 307, 312–15 (S.D.Tex.1984). *Bamford,* 569 F.Supp. at 165–67; *Ritter v. Zuspan,* 451

F.Supp. 926, 928–30 (E.D.Mich.1978); *FTC v. Cockrell,* 431 F.Supp. 558, 560 (D.D.C.1977).

At least two courts have described the due process requirement for national service in terms consistent with the more stringent *International Shoe* test. *See Smith v. Montgomery Ward & Co., Inc.,* 567 F.Supp. 1331, 1336–37 (D.Colo. 1983); *Cryomedics, Inc. v. Spembly, Ltd.,* 397 F.Supp. 287, 288 n. 3 (D.Conn.1975).

3. *See Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1314–15 (9th Cir.1985); *Haile v. Henderson Nat'l Bank,* 657 F.2d 816, 824–26 (6th Cir.1981), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1450, 71 L.Ed.2d 663 (1982); *FTC v.*

that a defendant receive sufficient notice of pending proceedings as set out in *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and its progeny. *See, e.g., Haile v. Henderson Nat'l Bank,* 657 F.2d 816, 826 (6th Cir.1981) (citing *Mariash v. Morrill,* 496 F.2d 1138, 1142–43, 1143 n. 6–9 (2d Cir.1974); *Driver v. Helms,* 74 F.R.D. 382, 389–91, 391 n. 6 (D.R.I.1977), *modified on other grounds,* 577 F.2d 147 (1st Cir.1978) (affirming the district court's holding on personal jurisdiction), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979)). If such notice is given, the fairness considerations "embodied in [fifth amendment] due process are satisfied if the party contesting personal jurisdiction is a resident of the United States, 'the sovereign that has created the court.'" *Piper Acceptance Corp. v. Slaughter,* 600 F.Supp. 169, 171 (D.Colo.1985) (quoting *Stafford v. Briggs,* 444 U.S. 527, 554, 100 S.Ct. 774, 789, 63 L.Ed.2d 1 (1980) (Stewart, J., dissenting)); *accord Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1315 (9th Cir.1985) (citing cases).

We are persuaded by the reasoning of these cases, and we therefore hold that ERISA's nationwide service provision, 29 U.S.C. § 1132(e)(2), provides this court with personal jurisdiction over Hubert with regard to Sprint's action to determine Hubert's entitlement to pension benefits. Hubert was properly served and had notice of the action, and because he resides in California, he has sufficient contacts with the United States. Further, because all of Sprint's claims arise from a common nucleus of facts, we hold that we have ancillary personal jurisdiction over any state law claims arising from Hubert's termination.

*Jim Walter Corp.,* 651 F.2d 251, 256 n. 9 (5th Cir.1981) (The Fifth Circuit has questioned whether the *Jim Walter* decision is undermined by the Supreme Court's characterization of personal jurisdiction in *Insurance Corp. of Ireland,* 456 U.S. 694, 102 S.Ct. 2099. *See Burstein v. State Bar of California,* 693 F.2d 511, 515–16 n. 8 (5th Cir.1982)); *Fitzsimmons v. Barton,* 589 F.2d 330, 334 (7th Cir.1979); *Mariash v. Morrill,* 496 F.2d 1138, 1142–43 (2d Cir.1974); *First Federal Savings & Loan v. Oppenheim, Appel, Dixon & Co.,* 634 F.Supp. 1341, 1345–48 (S.D.N.Y. 1986); *City of Harrisburg v. Bradford Trust Co.,* 621 F.Supp. 463, 467 (M.D.Pa.1985); *Ethanol*

*See Piper Acceptance Corp.,* 600 F.Supp. at 171–72 (citing cases).

## V. *Sanctions.*

Hubert seeks Rule 11 sanctions against Sprint's counsel for signing pleadings filed for an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11. He asserts that Sprint's counsel frivolously filed the declaratory judgment action intending to increase Hubert's costs in litigating his wrongful termination claims. Given our above discussion, we deny Hubert's motion.

IT IS THEREFORE ORDERED that Hubert's motion to dismiss for lack of personal and subject matter jurisdiction or, alternatively, to dismiss or transfer because of the interests of justice is denied in its entirety.

*Partners Acc. v. Wiener, Zuckerbrot, Weiss & Brecher,* 617 F.Supp. 300, 306–07 (E.D.Pa.1985); *Piper Acceptance Corp. v. Slaughter,* 600 F.Supp. 169, 171 (D.Colo.1985); *Combs v. Adkins & Adkins Coal Co.,* 597 F.Supp. 122, 125 (D.D.C.1984); *Clement v. Pehar,* 575 F.Supp. 436, 438–39 (N.D. Ga.1983); *Gilbert v. Bagley,* 492 F.Supp. 714, 746–47 (M.D.N.C.1980); *Driver v. Helmes,* 74 F.R.D. 382, 390–92 (D.R.I.1977), *modified on other grounds,* 577 F.2d 147 (1st Cir.1978) (affirming the district court's holding on personal jurisdiction), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979).