No. 20,692.

WILLIE B. BARBOUR, *Appellant*, V. MAUDE CAMPBELL, *Appellee*.

SYLLABUS BY THE COURT.

1. STATUTE OF FRAUDS—*Oral Promise to Pay Debt of Another—Not Enforceable.* Section 6 of the act for the prevention of frauds and perjuries (Gen. Stat. 1915, § 4889) forbids the courts of this state to entertain an action based upon a mere oral promise of one person to pay the debt of another person.

2. SAME—The statute of frauds declares the public policy of this state to be, that unless a promise of one person to pay the debt of another is in writing and signed by the promisor an action on that promise can not be maintained in a Kansas court, although the contract may be valid in the state where it was executed.

Appeal from Wyandotte district court, division No. 1; ED-WARD L. FISCHER, judge. Opinion filed November 10, 1917. Affirmed.

*George W. Littick,* of Kansas City, for the appellant.

*J. E. McFadden,* and *O. Q. Claflin, jr.,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The principal question presented in this appeal is controlled by the statute of frauds.

The plaintiff is the divorced wife of the late Webster S. Barbour, of Boise, Idaho. The defendant is his daughter. The plaintiff sued the defendant in the district court of Wyandotte county, Kansas, upon an oral promise of the defendant to pay the plaintiff for services rendered by her to defendant's father during his last sickness.

Plaintiff's deposition recites the facts relied upon to establish her cause of action:

"Mr. Barbour was very bad and I did not feel like leaving him, so while my sister was there he called Mrs. Campbell to his bedside and said to her, 'Maude, I have agreed to pay Willie $500.00 for nursing and caring for me and for her expenses and I want you in case I die to pay her this amount, saying if you will pay her that it will avoid my doing so and I will leave my estate to Lou and you.' She said you can depend on me father, I will pay her. He again said, Now Maude you will do

Barbour v. Campbell.

this won't you and she said, yes, father, I will. And he said, you know she has been kind, taking good care of me and done things for me that no one else would or could do and she said, Yes I know she has, and if the amount had been a thousand dollars I would pay her willingly."

The defendant prevailed below, and the plaintiff assigns and argues many errors, but a consideration of our statute for the prevention of frauds and perjuries may solve the whole problem. Section 6, in part, reads:

"No action shall be brought whereby to charge a party upon any special promise to answer for the debt, default or miscarriage of another person; . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing." (Gen. Stat. 1915, § 4889.)

Observe the language of the statute. It says no such action shall be brought. It does not say such a promise is illegal. It does not declare such a contract void. It merely withholds a remedy. It declares that the courts of this state may not be used to enforce such promises or such contracts. The title of the act declares its purpose, "An act for the prevention of frauds and perjuries." The act proceeds on the theory that to countenance such an action would open the door to all manner of frauds and encourage the baldest sort of perjury. The act announces the public policy of this state. Every lawyer, every judge, every critical observer knows that the greatest blight on the administration of justice is the persistent and ever-recurring perpetration of perjury, and a statute plainly designed to limit opportunities for perjury must not be frittered away with specious refinements and exceptions.

Plaintiff pleaded the Idaho statute of frauds and offered proof that the defendant's oral promise to pay her father's debt did not fall within the ban of the Idaho statute and that it would be enforceable in that state. Ordinarily a contract which is valid where made is valid everywhere, but there is a well-known exception to that rule. Briefly stated, the exception is that where the contract contravenes the settled public policy of the state whose tribunal is invoked to enforce the contract, an action on that contract will not be entertained. (*Third Nat. Bank of New York v. Steel*, 129 Mich. 434;

*Heaton v. Eldridge & Higgins,* 56 Ohio St. 87; Cooley's Constitutional Limitations, 7th ed., p. 178; 9 Cyc. 674-677; 5 R. C. L., 917, 918, 944, 945.)

In 2 Wharton on the Conflict of Laws, 3d ed., p. 1442, it is said:

"Statutes directing that no suit shall be sustained, in certain classes of cases, except on written testimony, are based on moral grounds. Their object, as is shown by the title of that which served as the pattern of all others, is to prevent fraud and perjury. Here, then, comes into play the position on which Savigny lays such great stress—that moral laws, or laws to effect moral ends, which are imposed by particular states, are peremptory and coercive, and are to be taken as rules of procedure by the judges of such states. It is true that Judge Story opposes to such a conclusion his great authority. He maintains that where parol contracts are good by the law of the place where they are made, they may be enforced in countries where they would, if there executed, be barred by the statute of frauds; and he cites a number of cases to this point, 'none of which,' his editor, Judge Redfield, states, 'seem to adopt the views he here intimates.' But it may now be regarded as settled that where the statute of frauds provides, in a particular state, that no suit shall be maintained on a particular contract unless it be in writing, the *lex fori,* in such case, is absolute, and applies to a foreign contract good by the law of the place of its solemnization."

This view renders it unnecessary to consider the other errors assigned. The judgment is affirmed.