No. 62,795

ST. PAUL SURPLUS LINES INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY, INTERNATIONAL INSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, and AIU INSURANCE COMPANY, *Appellees,* v. INTERNATIONAL PLAYTEX, INC., and PLAYTEX FAMILY PRODUCTS, INC., *Appellants.*

(777 P.2d 1259)

Opinion filed July 14, 1989.

*Robert L. Howard,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Stephen M. Kerwick,* of the same firm, and *William J. McSherry, Jr.,* of Bryan, Cave, McPheters & McRoberts, of New York, New York, were with him on the briefs for appellant.

*Philip L. Bowman,* of Adams, Jones, Robinson and Malone, Chartered, of Wichita, argued the cause, and *Laura L. Ice,* of the same firm, and *Thomas P. Kane, Edward M. Laine, Bethany K. Culp,* and *Jonathon C. Bloomberg,* of Oppenheimer Wolff & Donnelly, of Saint Paul, Minnesota, were with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: Defendants, International Playtex, Inc., and its successor in interest, Playtex Family Products, Inc., (referred to jointly as Playtex) appeal the trial court's holding that the public policy of the State of Kansas, as a matter of law, precludes Playtex from recovering $10,000,000 from its excess insurers, the plaintiffs herein. The judgment of $10,000,000 represents the amount of punitive damages assessed, in a products liability case, against International Playtex, Inc. *O'Gilvie v. Intern. Playtex, Inc.,* 609 F. Supp. 817 (D. Kan. 1985), *aff'd in part, rev'd in part* 821 F.2d 1438 (10th Cir. 1987), *cert. denied* 486 U.S. 1032 (1988).

This declaratory judgment action involves horizontal federalism. We are required to review the relationship of Kansas to her sister states in the areas of personal jurisdiction and choice of law. The Due Process Clause of the Fourteenth Amendment and the Full Faith and Credit Clause of Article IV, section 1, of the United States Constitution allocate power among the states to exercise personal jurisdiction and to apply state law.

The procedural vehicles of (1) partial summary judgment (K.S.A. 1988 Supp. 60-256) and (2) final judgment certification (K.S.A. 1988 Supp. 60-254[b]), exercised by the trial court in tandem, carry the appeal to this court. We find no error and affirm.

The specific issues for our review are: (1) Whether Playtex is subject to personal jurisdiction in Kansas; and (2) whether the trial court erred in (a) applying Kansas law to deny insurance coverage of the punitive damages award; (b) granting partial summary judgment; and (c) certifying the partial summary judgment as a final judgment pursuant to K.S.A. 1988 Supp. 60-254(b).

## FACTS

Betty O'Gilvie died on April 2, 1983, of toxic shock syndrome. Her husband, Kelly O'Gilvie, brought an action against Playtex in the United States District Court for the District of Kansas. He alleged that the use of Playtex super-deodorant tampons caused her death and, therefore, Playtex was liable under the Kansas law of strict liability in tort. The jury attributed 80 percent of the total fault to Playtex and 20 percent to Betty O'Gilvie's physician, who was not a party to the lawsuit. Actual damages of $1.525 million and $10 million in punitive damages were awarded. Judgment was entered against Playtex for 80 percent of the total amount of the actual damages. The federal district judge granted a remittitur reducing the punitive damage award to $1.35 million based upon Playtex's agreement to remove certain types of the product from the market and to enhance the product's warning. 609 F. Supp. at 819.

Both parties appealed. The Court of Appeals for the Tenth Circuit affirmed the jury verdict against Playtex, but reversed the punitive damage remittitur. 821 F.2d at 1450. Playtex's petition for *certiorari* was denied.

The punitive award of $10,000,000 and interest of approximately $3,500,000 has been paid by Playtex.

Playtex's excess insurers sought a declaration from the trial court that: (1) they are not obligated to indemnify Playtex for the punitive damages in the *O'Gilvie* action, and (2) they are obligated to pay only the costs of the federal court appeal attributable to the compensatory damage award.

Shortly after two of the insurers filed this action in Kansas, Playtex brought a similar action against the insurers in Delaware. *Playtex Family Products, Inc. v. St. Paul Surplus Lines Insurance Company,* case No. 88C-FE-166, Superior Court of Delaware, New Castle County. Subsequently, the pleadings in this action were amended to include the same parties. Playtex contends that the law of Delaware should apply because Delaware is the state where the tampons were manufactured and Delaware is Playtex's principal place of business. The insurers moved for a stay of the Delaware proceedings pending the outcome of the Kansas action. The insurers anticipated that Playtex would contest Kansas jurisdiction and, consequently, also filed suit in Minnesota, where the policy of the lead carrier was issued. The Minnesota action has been voluntarily stayed in deference to this case.

The trial court ruled that it had both subject matter and personal jurisdiction over Playtex and that Kansas law should be applied to determine the outcome of the controversy. The trial court held that, because public policy of the State of Kansas prohibits a wrongdoer from passing on the payment of punitive damage awards to insurance carriers, the plaintiff insurers are not obligated to indemnify Playtex for the punitive damage award assessed against Playtex in the *O'Gilvie* action. The trial court certified the partial summary judgment in favor of the insurers as a final judgment pursuant to K.S.A. 1988 Supp. 60-254.

On April 12, 1989, while this appeal was pending, the Superior Court of Delaware, New Castle County, Chandler, J., issued an opinion in case No. 88C-FE-166. The Delaware court addressed a motion by the insurers to dismiss based on res judicata, lack of ripeness, and failure to join indispensible parties. The Delaware court found that the question of the res judicata effect of the decision by the Kansas district court should be stayed pending

our decision. The Delaware court dismissed the portion of Playtex's complaint seeking a declaration concerning the insurability of punitive damages and the application of Delaware law which might arise in cases other than *O'Gilvie*. We granted Playtex's Motion to Include Judge Chandler's Opinion in the Record on Appeal in this action.

### The Insurance Policies Involved

A summary of the insurance policies involved will provide background understanding for our analysis of the issues.

The policies do not contain any choice of law provision stating that the law of a specific state controls the resolution of coverage disputes.

International Playtex, Inc., and its successor in interest, Playtex Family Products, Inc., are subsidiaries of Esmark, Inc., the named insured on the policies at issue in this litigation. Esmark, Inc., contracted with the plaintiff insurance companies for excess comprehensive liability coverage for Esmark and its subsidiaries for the 1982 to 1983 policy year. Mission National Insurance Company (Mission), which is not a party to this action, provided the first layer of excess coverage. Plaintiffs St. Paul Surplus Lines Insurance Company (St. Paul) and National Union Fire Insurance Company (National Union) provided the second layer of excess coverage on a pro rata basis.

The St. Paul policy was negotiated in California, issued in Minnesota, and delivered in Illinois. The National Union policy was issued in New York and delivered in Illinois, as was the plaintiff Granite State Insurance Company's (Granite State) policy.

National Union, Granite State, plaintiff International Insurance Company (International) and plaintiff AIU Insurance Company (AIU) shared the third layer of excess coverage on a pro rata basis. The International policy was negotiated and issued in California and delivered in Illinois. The AIU policy was negotiated, issued, and delivered in Illinois.

All the excess policies followed the terms of the Mission policy, which incorporated the terms of the underlying primary policy issued by Northwestern National Insurance Company.

When the verdict in the *O'Gilvie* action was rendered, Mission denied coverage for the punitive damage award and tendered payment for the compensatory award. Playtex rejected the tender

and pursued its appeals. The coverage under the Mission policy was subsequently exhausted on other claims and Playtex notified the other excess carriers that it would expect those carriers to pay the punitive damage award and fund the *O'Gilvie* appeals.

## Personal Jurisdiction

The trial court found that it had personal jurisdiction over Playtex pursuant to K.S.A. 1988 Supp. 60-308(b)(1). In *Schlatter v. Mo-Comm Futures, Ltd.*, 233 Kan. 324, 333, 662 P.2d 553 (1983), this court said that a trial court's determination that it had personal jurisdiction will be affirmed if there is personal jurisdiction under any of the provisions of the Kansas long arm statute (K.S.A. 1988 Supp. 60-308[b]). The plaintiffs (in this case, the insurers) carry the burden of proving the existence of personal jurisdiction over the defendant. 233 Kan. at 335.

We said in *Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 777-79, 740 P.2d 1089 (1987):

"The Kansas long arm statute is liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause of the Fourteenth Amendment to the U.S. Constitution.

. . . .

"[W]hen considering questions of personal jurisdiction, a two-step analysis is required. First, does the defendant's conduct fall within the scope of the relevant provision of the Kansas long arm statute? Second, does the exercise of personal jurisdiction in the particular case comply with the due process requirements of the Fourteenth Amendment as set out in the decisions of the United States Supreme Court?"

Playtex admitted in its answer to the amended petition for declaratory judgment that:

"defendant IPI was a Delaware corporation until it was dissolved in December, 1986, that the parent corporation of IPI from October 1, 1982 to October 1, 1983 was Esmark, Inc. ('Esmark') which was at that time also a Delaware corporation and further . . . that at that time IPI and Esmark had their executive headquarters located in Stamford, Connecticut and Chicago, Illinois, respectively."

Playtex also admitted that, prior to its dissolution, IPI manufactured Playtex super deodorant tampons, which were sold and distributed throughout the United States, including the State of Kansas.

K.S.A. 1988 Supp. 60-308(b) provides, in part:

"Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal

representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:

"(1) Transaction of any business within this state."

K.S.A. 1988 Supp. 60-308(b)(1) was interpreted by this court in *White v. Goldthwaite,* 204 Kan. 83, 88, 460 P.2d 578 (1969):

"From the foregoing cases it appears there are three basic factors which must coincide if jurisdiction is to be entertained over a nonresident on the basis of transaction of business within the state. These are (1) the nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation . . . ."

The trial court relied on *United Services Auto. Ass'n v. Cregor,* 617 F. Supp. 1053 (N.D. Ill. 1985), which has also been cited by both parties. The Cregors had contracted with a Texas insurance company to insure their Illinois home. The Cregors moved to Hawaii. They also insured their Hawaii residence with the Texas company. They were subsequently sued for fraud and breach of contract by the couple (the McNallys) who had purchased the Illinois residence. The Cregors tendered the defense of that lawsuit to the Texas insurer, who brought a declaratory judgment action to remove its responsibility to defend and to indemnify the Cregors. The Cregors argued that the Illinois court did not have personal jurisdiction over them in the declaratory judgment action because they were no longer Illinois residents. The Cregors contended that their Illinois contacts arose out of the fraud lawsuit and, therefore, were not sufficient to establish personal jurisdiction in the declaratory judgment case. The court did not agree.

"This declaratory judgment action requires the Court to determine whether coverage exists to protect the Cregors in the McNally's underlying suit. If such coverage exists, it will flow from the policy which insured the Cregors' Wilmette, Illinois home. Consequently, if coverage exists under the policy, it will arise out of actions taken by the Cregors in relation to their Wilmette, Illinois home and the sale of it." 617 F. Supp. at 1055.

Playtex advances an argument similar to that of the Cregors. Playtex contends that, although the federal court in Kansas had jurisdiction over the original *O'Gilvie* action pursuant to K.S.A. 1988 Supp. 60-308(b)(7)(B) (product liability), jurisdiction cannot

extend to a declaratory *contract* action where there was no connection with Kansas in the creation of the contract. The Cregors had been Illinois residents at the time the insurance contract was signed and the policy specifically insured Illinois property. The federal district court found that the Cregors had transacted business in Illinois. In the case at bar, none of the parties are Kansas residents and no business with regard to the negotiation of the insurance contracts was conducted in Kansas. Betty O'Gilvie, the insured risk, however, was located in Kansas.

Playtex argues that the current claim does not arise out of the use of its products sold in this state, but rather out of an insurance contract between nonresident corporations which have no connection to the State of Kansas.

K.S.A. 1988 Supp. 60-308(b) is to be liberally construed. It was not error for the trial court to find that the declaratory judgment action was sufficiently connected to the sale of Playtex products in Kansas to warrant personal jurisdiction over Playtex. The declaratory judgment action requires us to determine whether coverage for punitive damages exists to protect Playtex in the underlying *O'Gilvie* damage action. The question of coverage arises from the actions taken by Playtex in selling its product in Kansas, which subsequently caused the death of a Kansas resident. The plaintiff insurers' claim for an insurance coverage determination lies in the wake of the commercial activities of Playtex in Kansas. As the Tenth Circuit observed in *O'Gilvie*:

"Punitive damages are imposed under Kansas law for 'a willful and wanton invasion of the injured party's rights, the purpose being to restrain and deter others from the commission of like wrongs.' *Wooderson* [v. *Ortho Pharmaceutical Corp.*, 235 Kan. 387,] 681 P.2d [1038,] at 1061 [, *cert. denied* 469 U.S. 965 (1984)] (quoting *Cantrell v. Amarillo Hardware Co.*, 226 Kan. 681, 686, 602 P.2d 1326, 1331 (1979))." *O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438, 1446 (10th Cir. 1987).

The punitive damage award resulted from the application of Kansas law.

Although no activity took place in Kansas with regard to the formation of the insurance contracts, the parties anticipated that claims under the policies might arise in the State of Kansas. The automobile liability portion of the insurance policies includes endorsements to comply with the requirements of the Kansas Automobile Injury Reparations Act (K.S.A. 40-3101 *et seq.*) and the Kansas Financial Security Act (K.S.A. 1988 Supp. 40-

3104[a]). The policies contain a number of provisions designed to comply with various insurance laws and regulations of many different states.

Playtex knew that its tampons were distributed in Kansas. There was a product liability risk under the insurance policies arising from the sale of Playtex tampons in Kansas.

Playtex cites *Land Manufacturing, Inc. v. Highland Park State Bank,* 205 Kan. 526, 470 P.2d 782 (1970), in support of its argument that there is not a sufficient connection between the business activities of Playtex in Kansas and the insurers' declaratory judgment claim. In *Land Manufacturing,* the plaintiff had recovered a default judgment against the defendant, Highland Park State Bank. A year later, the plaintiff instituted garnishment proceedings against Chase Manhattan Bank based on the default judgment. Chase Manhattan argued that the district court lacked personal jurisdiction over it. Although Chase was transacting business in Kansas, its business activities in Kansas were unrelated to the underlying dispute between Land Manufacturing and Highland Park State Bank. In the instant action, if it were not for the sale of Playtex products in Kansas, resulting in the death of a Kansas resident, there would be no dispute between Playtex and its insurers.

Playtex asserts that in *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984), the United States Supreme Court held that contractual activities in a state that would be sufficient to create jurisdiction in a contract action are insufficient to create jurisdiction in an unrelated tort action. *Helicopteros* was a wrongful death action which arose out of a helicopter crash in Peru. Four United States citizens who were employees of a Houston-based company working on a pipeline project in Peru were killed in the crash. The representatives of the decedents brought suit in Texas against the company owning the helicopter.

Playtex's reliance on *Helicopteros* is misplaced.

The Court in *Helicopteros* did not find that the contractual activities of Helicol would be sufficient to subject Helicol to jurisdiction in a contract action. The Court noted that some negotiations on the contract were conducted in Houston, but that the contract was signed in Peru, was written in Spanish, and stated that any controversies arising out of the contract would be

submitted to the jurisdiction of the Peruvian court. All the parties in the case conceded that their claims against Helicol did not arise out of, or were they related to, Helicol's activities in Texas.

"Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation." 466 U.S. at 414.

Playtex also cites *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987). In *Asahi*, a California resident brought a product liability action in California against the manufacturer of a tire tube. The plaintiff had been severely injured and his wife killed in a motorcycle accident. He alleged the accident occurred because of a sudden loss of air and explosion in the rear tire of the motorcycle brought on by a defective tire, tube, and sealant. Cheng Shin Rubber Industrial Co., Ltd., the Taiwanese tube manufacturer, filed a cross-complaint against Asahi, the Japanese manufacturer of the tube's valve assembly. The plaintiff ultimately settled with Cheng Shin, leaving only the issue of indemnification between Cheng Shin and Asahi. Asahi's sales of tire valve assemblies to Cheng Shin took place in Taiwan.

The United States Supreme Court found that the mere act of placing a product into the stream of commerce was not sufficient to support a finding that Asahi had purposefully directed its actions toward the State of California. The court addressed the issue of California's interest in the contract indemnification claim:

"The Supreme Court of California argued that the State had an interest in 'protecting its consumers by ensuring that foreign manufacturers comply with the state's safety standards.' [Citation omitted.] The State Supreme Court's definition of California's interest, however, was overly broad. The dispute between Cheng Shin and Asahi is primarily about indemnification rather than safety standards. Moreover, it is not at all clear at this point that California law should govern the question whether a Japanese corporation should indemnify a Taiwanese corporation on the basis of a sale made in Taiwan and a shipment of goods from Japan to Taiwan." 480 U.S. at 114-15.

The facts in *Asahi* and the language of the opinion characterize it as an international case involving a choice of an inconvenient forum by Cheng Shin in which to assert its indemnification claim against Asahi.

In the present case, not only does Playtex have the requisite

minimum contacts with the State of Kansas, but the State of Kansas has a significant policy interest justifying its assertion of personal jurisdiction over Playtex.

At the time this case arose, the public policy of Kansas did not permit insurance coverage of punitive damages. *Koch v. Merchants Mutual Bonding Co.*, 211 Kan. 397, 507 P.2d 189 (1973); *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 228 Kan. 532, 618 P.2d 1195 (1980). See K.S.A. 40-2,115, effective April 26, 1984. There was no such overriding California public policy concern in the indemnification claim between Asahi and Cheng Shin. Where an award of punitive damages is made in Kansas, pursuant to the laws of Kansas, Kansas public policy should control the determination of who will pay those damages.

Playtex purposefully advertised and sold its tampons in Kansas. Playtex initiated the interstate activity giving rise to the insurers' declaratory judgment claim. Playtex profited from its activity in Kansas. Playtex had fair warning that it might be subject to suit in Kansas. In fact, Playtex has already defended itself in a lawsuit arising from these facts in Kansas.

"Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum [citation omitted], and the litigation results from alleged injuries that 'arise out of or relate to' those activities [citation omitted]." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).

Playtex possessed certain minimum contacts with Kansas, so that it was " 'reasonable and just, according to our traditional conception of fair play and substantial justice,' " for Kansas to exercise personal jurisdiction. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 807, 86 L. Ed. 2d 628, 105 S. Ct. 2965 (1985).

The trial court had personal jurisdiction over Playtex in this action.

## 2. Choice of Law

Playtex advances *Simms v. Metropolitan Life Ins. Co.*, 9 Kan. App. 2d 640, 685 P.2d 321 (1984), to support its argument that the trial court erred in applying Kansas law to an extraterritorial insurance contract. In *Simms*, the plaintiff, a Kansas resident, received group health insurance through her employer, headquartered in Tennessee. The group policy had been delivered to the employer in Tennessee, The employer distributed certificates of coverage to its employees. A dispute arose between the

plaintiff and the insurer over coverage for alcohol rehabilitation of her dependent son. The policy provided for limited coverage for such care. The applicable Kansas statute mandated broader coverage.

The Court of Appeals said, "Although the statute does not state its intended geographic reach, we cannot conceive that the legislature intended to attempt to regulate insurance contracts made outside this state." 9 Kan. App. 2d at 642. The court discussed Kansas choice of law principles for the construction of contracts and determined that the law of the state where the contract is made controls construction. *Simms* also stated that a contract is made when the last act necessary for its formation is completed. The law of the state where the master policy is delivered governs where a group insurance policy is involved. 9 Kan. App. 2d at 644.

The insurers in the instant case argue that *Simms* is distinguishable because it involved a legislative enactment, not a general public policy prohibition. Even if *Simms* were applicable to the facts in this case, Playtex's choice of law position is not strengthened. Playtex seeks to have Delaware law govern the instant insurance contracts because Delaware allows insurance for punitive damages. *Whalen v. On-Deck, Inc.*, 514 A.2d 1072 (Del. 1986). If, however, *Simms* controls the choice of law issue, Illinois law would govern the interpretation of the insurance contracts. Not only were the policies delivered to Playtex's parent corporation, Esmark, in Illinois, but also other substantial activity in the formation of the contracts occurred there. Illinois public policy prohibits insurance against liability for punitive damages arising out of the insured's misconduct. *Beaver v. Country Mutual Insurance Co.*, 95 Ill. App. 3d 1122, 1125, 420 N.E.2d 1058 (1981).

In *Phillips Petroleum Co. v. Shutts*, 472 U.S. at 816, the United States Supreme Court stated: "There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit."

The plaintiff in *Barbour v. Campbell*, 101 Kan. 616, 168 Pac. 879 (1917), sued for breach of an oral promise. The contract had been made in Idaho, where it was enforceable under the statute of frauds. The contract, however, was not enforceable under the Kansas statute of frauds. The court said:

"Ordinarily a contract which is valid where made is valid everywhere, but there is a well-known exception to that rule. Briefly stated, the exception is that where the contract contravenes the settled public policy of the state whose tribunal is invoked to enforce the contract, an action on that contract will not be entertained." 101 Kan. at 617.

See *Dow Chemical Corp. v. Weevil-Cide Co., Inc.,* 630 F. Supp. 125 (D. Kan. 1986); *Dickson v. Hoffman,* 305 F. Supp. 1040 (D. Kan. 1969).

Certain states have now abandoned the *lex loci* rule in favor of the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws § 188 (1969). See, *e.g. Amer. Home Assur. v. Safway Steel Prod.,* 743 S.W.2d 693 (Tex. App. 1987); *Crown Center v. Occidental Fire & Cas. Co.,* 716 S.W.2d 348 (Mo. App. 1986).

We reserve consideration of the Restatement's "most significant relationship" test for a later day. Our choice of Kansas law rests on Kansas public policy. The interest of Kansas exceeds Delaware's interest in the resolution of the instant controversy.

Playtex relies upon opinions of the United States Supreme Court in support of its argument that the interests of other states outweigh the interests of Kansas in this litigation. Our review of the controlling choice of law cases supports the application of Kansas law in the instant case.

*Home Ins. Co. v. Dick,* 281 U.S. 397, 74 L. Ed. 926, 50 S. Ct. 338 (1930), held that Texas law could not apply to an insurance policy between a Texas citizen and a Mexican insurer. However, the court specifically found that at all relevant times the insured was living in Mexico, and the boat which was insured was in Mexican waters at all times, including the time of the accident. No acts relating to the negotiation or performance of the insurance policy occurred in Texas. The Court said, "Doubtless, a State may prohibit the enjoyment by persons within its borders of rights acquired elsewhere which violate its laws or public policy; and under some circumstances, it may refuse to aid in the enforcement of such rights." 281 U.S. at 410.

*Allstate Ins. Co. v. Hague,* 449 U.S. 302, 66 L. Ed. 2d 521, 101 S. Ct. 633 (1981), involved a Wisconsin auto accident between two Wisconsin residents. The accident occurred in Pierce County, Wisconsin, which is close to the border of Minnesota. The insured/decedent lived in Wisconsin, but worked in Minnesota. He was not traveling to work at the time of the accident.

His wife, as personal representative of his estate, brought an action in Minnesota against his insurer. Shortly after the accident, the wife had moved to Minnesota. Minnesota law permitted stacking of uninsured motorist benefits; Wisconsin law did not. The Court found that the choice of Minnesota law by the Minnesota court did not violate the Due Process Clause or the Full Faith and Credit Clause. 449 U.S. at 320.

*Allstate* endorses the choice of Kansas law in the current dispute.

Playtex argues that the application of Kansas law to the insurance policies in question would frustrate the intent of the parties. The clause of the insurance contract which is at issue states the following:

"IT IS THE INTENTION OF THE COMANY [*sic*] AND THE NAMED INSURED THAT PUNITIVE AND EXEMPLARY DAMAGES BE FULLY INSURED TO THE MAXIMUM EXTENT PERMITTED BY LAW SUBJECT TO THE LIMITS OF LIABILITY AS SET FORTH UNDER SECTION III OF THIS POLICY." (Mission National Insurance Co. general condition "S.")

The wording of the Playtex policy is not ambiguous. The clause regarding punitive damages states that such damages will be covered to the extent permitted by law. One of the trial court's findings of fact was:

"39. The second layer excess carriers have denied coverage for punitive damages only in those situations where the bodily injury or death occurred in a state where punitive damages are uninsurable as a matter of public policy."

The Playtex coverage was designed to insure a number of possible risks throughout the United States, including those in the State of Kansas. The provisions of the policies which are designed to comply with the various automobile insurance requirements of different states, including Kansas, indicate that the parties intended the policies to have effect wherever liability might arise. "Whether an ambiguity exists in a written instrument is a question of law to be decided by the court." *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.*, 243 Kan. 130, 133, 754 P.2d 803 (1988).

Where a contract is found to be unambiguous, the written agreement determines the rights of the parties. *Kennedy*, 243 Kan. at 135. The insurance policies involved were not ambiguous. It was not necessary for the trial court to consider additional evidence in construing the meaning of the contract.

In its reply brief, Playtex emphasizes the fact that the present case is an action for a declaratory judgment, not a direct action to enforce an insurance contract. Playtex argues that it has paid the punitive award as a result of the *O'Gilvie* judgment and does not seek to enforce the insurance contract in Kansas. Playtex reasons that, because it has already paid the punitive damages, the insurers are now obligated to indemnify Playtex in its state of incorporation, Delaware. The punitive damages, however, were awarded by a federal court in Kansas, pursuant to Kansas law, to a Kansas citizen, to punish conduct that occurred in Kansas.

In *Crown Center v. Occidental Fire & Cas. Co.,* 716 S.W.2d 348, the insurers brought a declaratory judgment action to determine which of the insurers had the duty to defend Hyatt Corporation for claims arising out of the collapse of the skywalks at the Hyatt Regency Crown Center. Two of the insurers argued that Illinois law should apply because both the insurance companies and Hyatt Corporation were Illinois corporations and the insurance contracts were made in Illinois. The Missouri Supreme Court held that the law of the state in which the insured risk was located should control. 716 S.W.2d at 359.

In the Playtex companion Delaware action, the Delaware court refused to make a finding that Delaware law, not the law of the state where Playtex's activities caused injury, would control in determining who should pay punitive damages. The Delaware court also noted that Delaware has adopted the choice of law approach of the Restatement (Second) of Conflict of Laws § 188.

If we were to refuse to apply Kansas law on the issue of punitive damages, we would thwart the purposes for which the policy was adopted.

"Where exemplary damages are awarded for purposes of punishment and deterrence, as is true in this state, public policy should require that payment rest ultimately as well as nominally on the party who committed the wrong; otherwise they would often serve no useful purpose. The objective to be attained in imposing punitive damages is to make the culprit feel the pecuniary punch, not his guiltless guarantor." *Koch v. Merchants Mutual Bonding Co.,* 211 Kan. at 405.

The objective of the policy is to prevent wrongful acts against citizens of the State of Kansas. Here, a Kansas citizen died as a result of the misconduct of Playtex. The jury in the *O'Gilvie* case made the following specific findings:

"8. Did International Playtex know, or should it have known, of the increased

risk of developing toxic shock syndrome when using Playtex super deodorant tampons at the time of the death of Betty O'Gilvie?
"Yes  X       No___

"9. Was the failure of International Playtex to adequately warn about the increased risk of toxic shock syndrome with the usage of Playtex super deodorant tampons a reckless disregard by International Playtex of the consequences of its acts?
"Yes  X      No___ " 609 F. Supp. at 818.

A finding that Kansas public policy does not apply to the punitive damages in the *O'Gilvie* action would effectively excuse Playtex from the consequences of its reckless behavior within this state. Failure to apply Kansas law would establish an undesirable precedent for other tort and product liability actions. In any product liability action which involves an out-of-state manufacturer, the manufacturer could avoid the application of Kansas public policy where the manufacturer had contracted outside the State of Kansas for insurance of punitive damages. This would result in the uneven application of the public policy. Kansas tortfeasors would be required to feel the "pecuniary punch" while out-of-state tortfeasors could require their "guiltless" insurance companies to pay such damages. Out-of-state tortfeasors who contracted with out-of-state carriers would, therefore, not be subject to deterrence for committing reckless acts in Kansas.

We affirm the trial court's choice of Kansas law.

### Partial Summary Judgment

The trial court sustained the plaintiff insurers' motion for partial summary judgment. A prologue to any analysis of a summary judgment issue is the recitation and acknowledgment of the movant's burden and of our scope of appellate review.

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted]. The party opposing summary judgment, however, has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case. [Citations omitted]. If factual issues do exist, they must be material to the case to preclude summary judgment." *Bacon v. Mercy Hosp. of Ft. Scott,* 243 Kan. 303, 306-07, 756 P.2d 416 (1988).

Playtex points to "numerous controverted facts" connecting

the parties to the State of Delaware. The trial court found that Playtex's Delaware assertions were not material to its decision. Personal jurisdiction is a question of law to be determined by the trial court. Our analysis of the personal jurisdiction issue indicates that the record established a sufficient nexus between the State of Kansas and Playtex to permit the assertion of personal jurisdiction over Playtex. Whatever ties Playtex has to Delaware are noted, analyzed, and characterized as secondary to the issue of the personal jurisdiction of Playtex in the Kansas courts.

Playtex contends that summary judgment was improper because factual issues regarding the intentions of the parties as to the meaning of the punitive damage clause of the insurance policies were in dispute. A reading of Playtex's answer to the motion for partial summary judgment indicates that most of the insurers' contentions of fact were uncontroverted by Playtex. The trial court specifically found that the contraventions of fact made by Playtex were not material to the issues to be determined in the partial summary judgment. A review of the record supports the trial court's ruling.

The insurance contracts in issue stated that punitive damages would be insured to the maximum extent allowed by law. Kansas law prohibits the insurance of punitive damages; therefore, under the express terms of the contract, punitive damages arising out of Kansas litigation would not be covered.

In its journal entry of partial summary judgment, the trial court said:

"This controversy arises out of injuries in Kansas suffered by a Kansas resident resulting in her wrongful death. Providing for the award of punitive damages in civil actions is a significant method by which this state protects its citizens. This state's interest in protecting its citizens and its duty to protect its citizens is of the highest order. This interest would be undermined if Kansas law were not applied to the question presented in this action."

The analysis of the choice of law issue also indicates that the trial court had sufficient facts to determine that Kansas law should apply to the litigation. Playtex indicates that, had it been able to complete its discovery, it could have shown that the choice of Delaware law was the proper choice in this litigation.

This court has held that, ordinarily, a motion for summary judgment should not be sustained so long as discovery is incomplete. *Beck v. Kansas Adult Authority*, 241 Kan. 13, 26-27, 735 P.2d 222 (1987).

Our public policy analysis indicates that additional facts, yet to be discovered, which may suggest that Delaware law should be applied to this action are not relevant. Kansas will not apply the law of another state on the instant issue of insurance and punitive damages in contravention of Kansas public policy. "If a disputed fact, however resolved, could not affect the judgment it is not a material fact so as to preclude summary judgment." *In re Estate of Messenger*, 208 Kan. 763, Syl. ¶ 4, 494 P.2d 1107 (1972).

## A Final Judgment Subject to Appeal

K.S.A. 1988 Supp. 60-254(b) states:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim or, when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

The trial court specifically found that the issues relating to the liability for punitive damages were unrelated to the remaining issues in this litigation and certified the ruling on the motion for partial summary judgment as a final judgment under K.S.A. 1988 Supp. 60-254.

The plaintiff insurers' second claim for relief, which has not yet been adjudicated, seeks a declaration that the insurers are liable for the expenses of the appeal of the *O'Gilvie* action only to the extent that they challenged the award of compensatory damages.

A certification pursuant to K.S.A. 1988 Supp. 60-254(b) must contain an express determination that there is no just reason for delay and an express determination that the entry of judgment is a final judgment. *City of Salina v. Star B, Inc.*, 241 Kan. 692, 695, 739 P.2d 933 (1987). The trial court's entry of judgment met these two requirements. Because Fed. R. Civ. Proc. 54(b) is identical to K.S.A. 1988 Supp. 60-254(b), Kansas has followed the federal cases interpreting 54(b) certifications. 241 Kan. at 695.

Playtex contends the claim that remains below is between the same parties and predicated on the same insurance contracts; consequently, the trial court erred in certifying the partial summary judgment as a final judgment. Playtex cites *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 47 L. Ed. 2d 435, 96 S. Ct. 1202 (1976), in support of its contentions. In *Liberty*, the United

States Supreme Court held that a 54(b) certification was improper where the plaintiff's complaint advanced a single legal theory which was applied to only one set of facts. 424 U.S. at 743.

In *Henderson v. Hassur*, 1 Kan. App. 2d 103, 562 P.2d 108 (1977), a number of claims, counterclaims, and cross-claims were asserted out of a contract for the building and operation of Pizza Hut franchises in Mexico. The trial court granted partial summary judgment on some of the claims, but reserved the issues of punitive damages and cross-claims between the two plaintiffs. The Court of Appeals found that the trial court had not issued a 54(b) certificate as required by the statute. The court held that, even had the trial court issued the certificate, the remaining counterclaim was so closely related to the claims disposed of in the partial summary judgment that disposition of both was required for a final decision. 1 Kan. App. 2d at 111.

The issue of whether the insurers were liable for punitive damages is intertwined with the issue of whether the insurers would be required to fund the appeal from those punitive damages. The insurers argue, "The resolution of this issue and certification of the appeal has served to expedite the conclusion of this dispute and precluded the Defendants from relitigating this issue and undermining the public policy of this state in the Delaware action." We agree.

The insurers cite *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 64 L. Ed. 2d 1, 100 S. Ct. 1460 (1980). In *Curtiss-Wright* the Supreme Court granted *certiorari* in order to examine the use of 54(b) as a procedural device:

"The court of appeals must, of course, scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units. But once such judicial concerns have been met, the discretionary judgment of the district court should be given substantial deference, for that court is 'the one most likely to be familiar with the case and with any justifiable reasons for delay.' [Citation omitted.] The reviewing court should disturb the trial court's assessment of the equities only if it can say that the judge's conclusion was clearly unreasonable." 446 U.S. at 10.

The Court in *Curtiss-Wright* endorsed its observation made in *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435, 100 L. Ed. 1297, 76 S. Ct. 895 (1956), that the function of the district court under the Rule is to act as "dispatcher." The district court is to determine the "appropriate time" when each final decision in a

multiple claims action is ready for appeal. The district court's discretion is to be exercised " 'in the interest of sound judicial administration.' " *Curtiss-Wright*, 446 U.S. at 8.

We adopt the *Curtiss-Wright* rationale as the correct one to invoke for a K.S.A. 1988 Supp. 60-254(b) determination.

Litigation on the same matters was pending in the state courts of Delaware and Minnesota at the time partial summary judgment was entered in this case. The concept of efficient judicial administration would be served by allowing this court to determine the personal jurisdiction and choice of law issues before the case advanced further. The Delaware court has indicated that it is waiting for this court's determination of the personal jurisdiction issue. The Minnesota action is stayed, pending this decision. Our adjudication of the issue of plaintiff insurers' nonliability for punitive damages will effectively dispose of the issue of the insurers' liability for the expenses of the federal court appeal of punitive damages.

Certification will not result in unnecessary appellate review.

The claims of jurisdiction and choice of law will not be mooted by any future developments in the case. This court will not have to decide these two issues more than once.

We agree with the observation of the insurers that any issues relating to the allocation of costs of the federal appeal are fact specific.

### The Playtex Counterclaim - The Insurers' Motion

The insurers have advanced the argument that, because Playtex filed a counterclaim, characterized by Playtex as contingent, it waived jurisdiction.

The trial court specifically declined to decide or make any conclusions of law with respect to whether the counterclaim is "a compulsory counterclaim, contingent counterclaim or whether it is a counterclaim at all."

The insurers have filed a motion to strike Appendix A of the Playtex brief and portions of the record on appeal, including arguments based thereon.

In view of our disposition of the appeal it is not necessary to consider either the "counterclaim question" or the insurers' motion.

Affirmed.