Jessica **ELLIS**, By and Through Her Mother and Next Friend, Tonya **ELLIS**, Plaintiff,

v.

Pat E. **BLAICH**, Defendant.

No. 92–1427–PFK.

United States District Court, D. Kansas.

Nov. 2, 1993.

Steven M. Roth, of Dickson & Pope, P.A., Topeka, KS, for plaintiff.

Vince P. Wheeler, of Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, KS, for defendant.

Timothy Finnerty and Susan G. Saidian, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., Wichita, KS, for intervenors.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, Chief Judge.

The question immediately before the court is whether the plaintiff's insurance carrier, Business Men's Assurance Company of America (BMA), has the right to intervene to recover the costs of medical expenses it paid as a result of the dog attack. Under the insurance policy issued by BMA which covers plaintiff Jessica Ellis, if a person covered under the policy "recovers money for medical expenses incurred due to an injury or sickness for which BMA paid benefits," BMA has the right to repayment of the costs it has paid. The policy provides that the rights created thereunder should be determined in accordance with the law of the state where the policy was delivered.

Here, the insurance policy in question was delivered in Tennessee and the parties essentially agree that, under Kansas choice of law rules, Kansas would look to Tennessee law to determine the validity of the contract. It is also agreed that such insurance provisions are valid under Tennessee law.

■ The only real question here is whether there is some public policy which would cause the courts of Kansas to refuse to apply Tennessee law. Ellis argues that such a public policy is reflected in K.A.R. 40–1–20, which provides: "An insurance company shall not issue contracts of insurance in Kansas containing a 'subrogation' clause applicable to coverages providing for reimbursement of medical, surgical, hospital or funeral expenses." Thus, a policy provision such as the one at issue here could not be issued lawfully in Kansas.

The problem is that this is a very limited public policy. The administrative regulation does not invalidate all contracts of insurance which contain such provisions. It only prohibits an insurance company from issuing such policies *in Kansas*.

In opposing the motion to intervene, Ellis relies mainly on the case of *St. Paul Surplus Lines Ins. v. International Playtex*, 245 Kan. 258, 777 P.2d 1259 (1989), in which the Kansas Supreme Court held that the Kansas public policy against the insurability of punitive damages served to prohibit the defendant in a Kansas action from obtaining benefits for a punitive damages award under an insurance policy which had been issued in another state. In so ruling, the court noted that the purpose of the Kansas policy "is to prevent wrongful acts against citizens of the State of Kansas. Here, a Kansas citizen died as a result of the misconduct of Playtex." 245 Kan. at 272, 777 P.2d 1259. The court further stressed that a contrary result would result in an uneven application of public policy which would "effectively excuse Playtex from the consequences of its reckless behavior within this state." *Id.*, at 273, 777 P.2d 1259.

In the present case, in contrast, the insurance policy was issued in Tennessee to the plaintiff, a resident of Alabama. Both Tennessee and Alabama law provide that subrogation provisions such as the one in issue here are valid. The only connection with Kansas is that it provided the scene where Ellis was bitten when visiting.

In *Simms v. Metropolitan Life Ins.*, 9 Kan.App.2d 640, 685 P.2d 321 (1984), the court addressed the applicability of K.S.A. 40–2,105, which requires that an insurer offer coverage for treatment at state licensed alcoholic treatment centers, to the policy issued by the defendant insurance company. The court found that the application of the statute was governed by a determination of where the insurance policy was made, stating: "Although the statute does not state its intended geographic reach, we cannot conceive that the legislature intended to attempt to regulate insurance contracts made outside this state." 9 Kan.App.2d at 642, 685 P.2d 321. The court then analyzed the policy and determined that it was made outside Kansas, and so held that K.S.A. 40–2,105 did not govern the policy.

The present case is an even stronger case for concluding that Kansas law does not govern the rights under the BMA policy, since the regulation defining the public policy explicitly limits itself to policies issued "in Kansas."

 The public policy question is the issue which is by far the most urgently pressed by Ellis. Ellis does offer two additional arguments, however: (1) that Kansas law should govern because this is where the conservatorship was established, and (2) that BMA enjoys no right of subrogation until it has shown that she received full compensation as a result of the settlement. With respect to the first argument, Ellis provides no authority for it and it would be remarkable if the otherwise valid provisions of an insurance contract could be circumvented so easily by the voluntary act of creating a conservatorship in a given state. Ellis's second argument relies mainly on cases holding that an insured must receive full compensation for an injury before the insurer has a right of subrogation. But most of these cases deal with a general common-law implied right of subrogation, not with, as here, a contract provision specifically requiring the repayment of sums advanced for medical expenses. And, as noted earlier, such a provision is valid under Tennessee and Alabama law.

IT IS ACCORDINGLY ORDERED this 2nd day of November, 1993, that the motion to intervene of Business Men's Assurance Company (Dkt. No. 24) is hereby granted.