**BENEDICTINE COLLEGE, INC., Plaintiff,**

v.

**CENTURY OFFICE PRODUCTS, INC., Nodaway Valley Bank, and General Electric Capital Corp., Defendants.**

**Civ. A. No. 92–2434–GTV.**

United States District Court, D. Kansas.

Oct. 26, 1994.

Martin J. Asher, Duncan, Senecal & Asher, Chartered, Atchison, KS, John G. Mazurek, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for Benedictine College, Inc.

Kenneth F. Crockett, Topeka, KS, for Century Office Products, Inc.

Mark D. Hinderks, Stinson, Mag & Fizzell, Overland Park, KS, Mark A. Shaiken, Stinson, Mag & Fizzell, Lisa C. Creighton, Sprint Communications Co., L.P., Kansas City, MO, for Nodaway Valley Bank.

Dennis R. Dow, Todd Ruskamp, Timothy E. Congrove, Shook, Hardy & Bacon, Kansas City, MO, for G.E. Capital.

### *MEMORANDUM AND ORDER*

VAN BEBBER, District Judge.

Plaintiff Benedictine College, Inc. (Benedictine), brought this action seeking recision of equipment lease agreements it entered into with defendant Century Office Products, Inc. (COPI). Defendants Nodaway Valley Bank (Nodaway) and General Electric Capital Corp. (GECC), as assignees of COPI's rights under the two agreements, asserted counterclaims against Benedictine for breach of the agreements. By its Memorandum and Order entered on May 18, 1994, this court granted the summary judgment motions of Nodaway and GECC on their counterclaims, 853 F.Supp. 1315.

This case is before the court on two motions filed by Benedictine. Both are titled, "Motion to Set Aside, Reconsider, Alter, or Amend Judgment." The first motion (Doc. 78) was filed on June 20, 1994, and relates to the Journal Entry of Judgment in favor of GECC entered on June 7, 1994. The second motion (Doc. 84), filed on June 30, 1994, relates to the Journal Entry of Judgment in favor of Nodaway entered on June 16, 1994. For the reasons set forth below, the motions are denied.

### I. Background

The court will briefly sketch the relevant facts and procedural history surrounding this case. The court's Memorandum and Order entered on May 18, 1994, contains a more complete discussion of the facts.

On May 1, 1991, Benedictine entered into a lease purchase agreement with COPI under which it was to receive photocopy machines in exchange for a promise to make 61 monthly payments and one final payment. That same day COPI assigned all its rights under the agreement, as permitted by the terms of the agreement, to Mid–Continent Leasing which then assigned its interest to Nodaway. Benedictine made monthly payments to Nodaway until November, 1992. Benedictine entered into a similar equipment lease with COPI on August 19, 1992. COPI assigned its rights under that lease agreement to GECC, but Benedictine failed to make any payments to GECC.

Benedictine commenced this action by filing a petition in the District Court of Atchison County, Kansas, on October 15, 1992, against GECC, Nodaway, and COPI. Benedictine sought to rescind both lease agreements based on material breach and failure of consideration. On October 27, 1992, COPI filed a notice of bankruptcy stating that it had commenced a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the District of Kansas. On November 12, 1992, Nodaway timely removed

the state court action to this court pursuant to 28 U.S.C. § 1452 and Fed.R.Bankr.P. 9027.

GECC and Nodaway both asserted counterclaims against Benedictine for amounts due under the equipment leases. In granting the summary judgment motions of GECC and Nodaway, this court held that both lease agreements contained provisions which precluded Benedictine from asserting certain defenses against the assignees in order to avoid enforcement of the agreements.

## II. Legal Standards

These motions are brought as motions to reconsider and as motions to alter and amend the judgment pursuant to Fed. R.Civ.P. 59(e). A motion to reconsider is a creature of local rule. *See* D.Kan.Rule 206(f); *Prudential Sec., Inc. v. LaPlant,* 151 F.R.D. 678, 679 (D.Kan.1993). A motion for reconsideration of an order granting summary judgment is essentially the same as a Rule 59(e) motion to alter or amend judgment. *All West Pet Supply Co. v. Hill's Pet Prod. Div., Colgate–Palmolive Co.,* 847 F.Supp. 858, 860 (D.Kan.1994).

The standards governing motions to reconsider are well established. A motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence. *Anderson v. United Auto Workers,* 738 F.Supp. 441, 442 (D.Kan.1990). The standards applied to motions to alter or amend under Rule 59(e) are the same. *See Renfro v. City of Emporia,* 732 F.Supp. 1116, 1117 (D.Kan.1990), *aff'd,* 948 F.2d 1529 (10th Cir.1991), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992).

A party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments on a motion to reconsider. *Renfro,* 732 F.Supp. at 1117. "[R]evisiting the issues already addressed 'is not the purpose of a motion to reconsider,' and 'advancing new arguments or supporting facts which were otherwise available for presentation when the original summary judgment motion was

briefed' is likewise inappropriate." *Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992). Finally, the court is not required to supply the rationale that the parties were unable to find. *See Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir.1991) ("court will not construct arguments or theories for the [parties] in the absence of any discussion of those issues").

## III. Analysis

Benedictine raises a number of issues in its motions. First, Benedictine claims that this court lacked subject matter jurisdiction over this action. Benedictine's other claims all relate to the court's decision granting GECC and Nodaway's motions for summary judgment. The court will address each topic separately.

### A. Subject Matter Jurisdiction

In its motions, Benedictine argues for the first time that the court lacked subject matter jurisdiction because the claims involved are neither "core proceedings" nor "related to" COPI's bankruptcy action.

Federal district courts are granted "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Thus, in addition to bankruptcy filings ("cases under title 11" as described in 28 U.S.C. § 1334(a)), district courts potentially have jurisdiction over three types of title 11 matters: (1) proceedings arising under title 11, (2) proceedings arising in a case under title 11, and (3) proceedings related to a case under title 11. *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 264 (3d Cir.1991) (citing *In re Wolverine Radio Co.,* 930 F.2d 1132, 1141 (6th Cir.1991); *Matter of Wood,* 825 F.2d 90, 92 (5th Cir.1987)). The court has jurisdiction if this case falls into any of the three categories. Thus, the court need only determine "whether a matter is at least 'related to' the bankruptcy." *In re Wolverine Radio Co.,* 930 F.2d at 1141.

The statute does not define "related to" jurisdiction. The Tenth Circuit, however,

has cited with approval the formulation first articulated in *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984), and later adopted by most of the other circuits. *See In re Gardner,* 913 F.2d 1515, 1518 (10th Cir.1990) (citing *Pacor; In re Wood,* 825 F.2d 90, 93 (5th Cir.1987); *In re Dogpatch U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987)). The *Pacor* Court held that the "test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor,* 743 F.2d at 994. "Although the proceeding need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate." *In re Gardner,* 913 F.2d at 1518.

Applying the "conceivable effect" test to the facts of this case, it is clear that the action commenced by Benedictine was "related to" the bankruptcy proceeding. The outcome of this case could conceivably have an effect on the bankruptcy estate since Benedictine asserted claims against COPI. The Pretrial Order entered in this case shows that Benedictine is claiming actual damages totalling $328,000 against COPI. Benedictine's claim against COPI was in part dependent on the outcome of its actions against GECC and Nodaway to rescind the lease agreements. In any event, this action could conceivably have resulted in a claim against the bankruptcy estate.

The court finds that it had subject matter jurisdiction over this action as a case "related to" a bankruptcy proceeding, pursuant to 28 U.S.C. § 1334(b).

**B.  Summary Judgment for GECC**

■ Benedictine raises a number of issues in challenging the court's grant of summary judgment to GECC. Benedictine argues that: (1) the "hell or high water" clauses should not be enforced because of defects in the lease agreement and assignment; (2) two side agreements were incorporated into the lease agreement and establish that GECC breached the contract; and (3) the "hell or high water" clauses do not give rise to an enforceable waiver of defense clause under UCC § 9–206.

In raising these arguments Benedictine has not presented any new evidence that was unavailable at the time the summary judgment motions were under consideration. Rather, Benedictine contends that the court misunderstood Benedictine's position with respect to the evidence and also misapprehended the relevant facts. After reviewing these new arguments, however, the court concludes that Benedictine has not offered any information or insight not previously considered by the court in ruling on the summary judgment motions.

**C.  Summary Judgment for Nodaway**

■ Benedictine first contends that the court erred in awarding attorneys fees and expenses to Nodaway. In the May 18, 1994, Memorandum and Order, the court found that Missouri substantive law should apply to the lease agreement assigned to Nodaway based on the choice of law provision in that agreement. In so doing, the court also held that Kansas law did not preclude the awarding of attorneys fees and costs in accordance with another provision in the agreement. The parties agreed to the amount of reasonable attorneys fees and the court entered a Journal Entry of Judgment on June 21, 1994, which awarded Nodaway attorneys fees in the amount of $9,090.42.

Benedictine now argues that even if Missouri law applies to the lease agreement, this court cannot enforce the attorneys fees provision because it is contrary to Kansas public policy. A Kansas statute, in effect prior to July 1, 1994, provided that:

> Hereafter it shall be unlawful for any person or persons, company, corporation or bank, to contract for the payment of attorney's fees in any note, bill of exchange, bond or mortgage; and any such contract or stipulation for the payment of attorney's fees shall be null and void; and that hereafter no court in this state shall render any judgment, order or decree by which attorney's fees shall be allowed or charged to the maker of any promissory note, bill of

exchange, bond, mortgage, or other evidence of indebtedness by way of fees, expenses, costs or otherwise.

K.S.A. § 58–2312.

The Kansas Legislature amended this statute by Senate Bill No. 564 which was signed by the Governor on April 25, 1994, and became effective on July 1, 1994. As amended, K.S.A. § 58–2312 now permits recovery of attorneys fees in a wide variety of commercial contexts, including those previously prohibited by statute. At the time the court granted the summary judgment motions in this case, the amended statute had been signed into law but was not yet effective.

"The substantive law of a foreign state is entitled to comity in a Kansas court (including this federal court) unless contrary to Kansas public policy." *Dow Chemical Corp. v. Weevil–Cide Co., Inc.*, 630 F.Supp. 125, 128 (D.Kan.1986). The Kansas Supreme Court applied this principle in *Barbour v. Campbell*, 101 Kan. 616, 168 P. 879 (1917), when it held that a contract executed in Idaho, and otherwise enforceable under Idaho law, would not be enforced by a Kansas court because it violated the Kansas statute of frauds. The court reasoned:

> Ordinarily a contract which is valid where made is valid everywhere, but there is a well-known exception to that rule. Briefly stated, the exception is that where the contract contravenes the settled public policy of the state whose tribunal is invoked to enforce the contract, an action on that contract will not be entertained.

101 Kan. at 617, 168 P. at 880.

Benedictine cites two published cases in which courts refused to enforce attorneys fees provisions based on the public policy stated by K.S.A. § 58–2312, even though the substantive law of another state otherwise applied. *See Rubenstein v. Nourse*, 70 F.2d 482 (8th Cir.1934); *Young v. Nave*, 135 Kan. 23, 10 P.2d 23 (1932). More recently, the Kansas Supreme Court used the public policy exception in refusing to apply the substantive law of another state. In *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.*, 245 Kan. 258, 777 P.2d 1259 (1989), *cert. denied*, 493 U.S. 1036, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990), Playtex's insurers brought a declaratory judgment action in Kansas in which they sought a declaration that a punitive damage award against Playtex in another law suit was not insurable. The court found that Delaware law, under which punitive awards were insurable, violated public policy. 245 Kan. at 273, 777 P.2d 1259. The court refused to apply Delaware law and instead entered judgment in favor of the insurers on the basis of Kansas law and policy. *Id.*

Not every Kansas statutory provision, however, has been held to represent the type of strong public policy that would bar application of another state's contrary law. In a case governed by Indiana law, the Tenth Circuit rejected an argument that the public policy of Kansas, the forum jurisdiction, prevented application of the Indiana statute of repose in a products liability action. *See Alexander v. Beech Aircraft Corp.*, 952 F.2d 1215 (10th Cir.1991). The court held that an exception in the Kansas statute of repose did not represent a strong public policy as would be required to reject the substantive law of the state where the tort and injury occurred. *Id.* at 1224. *See also Ellis v. Blaich*, 837 F.Supp. 1101 (D.Kan.1993) (Kansas insurance regulation not sufficient to preclude application of Tennessee law).

Applying these principles to the case at bar, the court finds that K.S.A. § 58–2312, even if applicable to the provisions of what is purportedly a lease agreement and not a note, does not represent the type of public policy that would preclude a Kansas court from enforcing an otherwise valid attorneys fees provisions in a contract governed by the laws of another state. This is especially true given the fact that at the time the court ruled, the Kansas statute had been amended to allow such provisions. The court therefore finds that its award of attorneys fees to Nodaway was proper.

■ Benedictine also contends that the court's decision to enforce the lease agreement assigned to Nodaway was erroneous because that agreement was modified by the later lease agreement which was assigned to GECC. This argument was not previously raised in any pleading or the pretrial order,

nor in connection with the summary judgment motions. Benedictine's contention that the agreement was modified is not based on undiscovered evidence and is not appropriate for consideration on a motion for reconsideration or to alter or amend judgment under Fed.R.Civ.P. 59(e).

Benedictine's remaining arguments challenging the summary judgment ruling all deal with the enforceability of the lease agreement assigned to Nodaway. In raising these arguments Benedictine has not presented any new evidence that was unavailable at the time the summary judgment motions were under consideration. After reviewing these new arguments, the court concludes that Benedictine has not offered any information or insight not previously considered by the court in ruling on the summary judgment motions.

IT IS, THEREFORE, BY THE COURT ORDERED that Benedictine's motions to set aside, reconsider, alter, or amend judgment (Doc. 78 and 84) are denied.

**IT IS SO ORDERED.**